

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José J. Zapata Berríos y la Sociedad de Bienes Gananciales constituida por éste y Luz María Rivera Rolón<br><br>    Recurridos<br><br>        v.<br><br>J.F. Montalvo Cash & Carry, Inc.<br><br>    Peticionaria | Certiorari<br><br>2013 TSPR 95<br><br>189 DPR ____ |

Número del Caso: CC-2012-152


Fecha: 27 de agosto de 2013


Región Judicial de Bayamón, Aibonito y Humacao


Abogados de la Parte Peticionaria:

        Lcdo. Francisco Rebollo López
        Lcdo. José Silva Cofresí
        Lcdo. Héctor Santaella Santé


Abogados de la Parte Recurrida:

        Lcdo. Efraín Rivera Pérez
        Lcdo. Rubén T. Nigaglioni
        Lcdo. Yum E. Ramos Perales



Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| JOSÉ J. ZAPATA BERRÍOS y la Sociedad de Bienes Gananciales constituida por éste y LUZ MARÍA RIVERA ROLÓN<br><br>Recurridos<br><br>v.<br><br>J.F. MONTALVO CASH & CARRY, INC.<br><br>Peticionaria | Núm. CC-2012-0152 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 27 de agosto de 2013.

En el proceso de resolver este recurso pautamos sobre varios temas que inciden en el mecanismo de sentencia sumaria. Primeramente, rechazamos el uso de una declaración jurada diseñada por una parte, específicamente, para contradecir el testimonio provisto por ésta bajo juramento en una deposición anterior, con el propósito de impedir que se dicte sentencia sumaria en su contra. Igualmente, abordamos los requisitos de forma fijados para impugnar satisfactoriamente los hechos materiales que alegadamente no se encuentran en controversia según formulados por el proponente de una sentencia sumaria, a tenor con la nueva Regla 36 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36 (2010).

Por último, interpretamos el concepto de justa causa consignado en el Artículo 2(e) y (f) de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (**Ley 80**),[1] 29 L.P.R.A. sec. 185b(e) y (f) (2009), mediante el cual se le permite a un patrono cesantear empleados a través de un proceso de reorganización cuando enfrenta una reducción en el volumen de ventas o ganancias de su empresa, sin infringir dicho estatuto. Veamos.

## I

El Sr. José J. Zapata Berríos (señor Zapata o el recurrido), su esposa y la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentaron una Demanda en contra de J.F. Montalvo Cash & Carry, Inc. (J.F. Montalvo o la peticionaria) por el alegado despido injustificado del recurrido. La reclamación se fundamentó exclusivamente en las disposiciones de la Ley 80.

J.F. Montalvo contestó la Demanda y entre sus defensas planteó que medió justa causa para cesantear al señor Zapata. A base de ello, oportunamente sometió una Solicitud de Sentencia Sumaria requiriendo la desestimación de la reclamación del recurrido. En su moción la peticionaria, esencialmente, expuso que el 1 de diciembre de 2010 despidió al señor Zapata de su puesto de Coordinador y Ayudante del Presidente como parte de un

---

[1]    29 L.P.R.A. secs. 185a-185m (2009).

proceso de reorganización suscitado por la reducción en el volumen de ventas de la compañía. A esos efectos, destacó que entre los años 2008 y 2009 el ingreso neto de la empresa disminuyó de tres millones doscientos sesenta y siete mil setecientos cinco dólares ($3,267,705) a setecientos noventa y cuatro mil setecientos ochenta y siete dólares ($794,787). Igualmente, alegó que para el 1 de diciembre de 2010 también se cesantearon a otros empleados entre los cuales se encontraban el Dr. José Montalvo (hermano del fenecido Presidente de la compañía, Sr. Frank Montalvo), la Contralora, la Secretaria del Gerente General, la Secretaria del señor Zapata, así como la Asistente de Compra. Por último, sostuvo que no se contrató a otra persona para realizar las funciones correspondientes al cargo que ocupaba el recurrido al momento de su despido.

En apoyo a su Solicitud de Sentencia Sumaria, J.F. Montalvo hizo referencia a la deposición tomada al recurrido donde éste admitió que, en calidad de Coordinador y Ayudante del Presidente, tenía acceso a los estados financieros de la empresa, por lo que estaba al tanto de la situación económica de la misma. Además, sostuvo que el señor Zapata admitió en su deposición que, durante el 2010, le informó al entonces Presidente que era necesario tomar medidas para atender la pérdida de dinero que se estaba experimentando. Igualmente, el recurrido negó conocimiento alguno relativo a si se había contratado

un remplazo para su antiguo puesto de trabajo. La peticionaria también sometió una Declaración Jurada de su Oficial de Recursos Humanos, quien certificó que no se había sustituido al señor Zapata, ni se había empleado a otras personas para realizar sus funciones en dicho puesto.

El recurrido, basado en su deposición y en una declaración jurada, se opuso a la solicitud de la peticionaria argumentando que la alegada pérdida en ventas y ganancias no era sino un pretexto de J.F. Montalvo para despedirlo y que existían hechos en controversia que impedían la resolución del caso por la vía sumaria. A esos efectos, apuntó al pago de bonos de productividad que se hizo a ciertos empleados de la empresa, así como a la contratación de nuevos empleados luego de su cesantía. Aseveró que J.F. Montalvo no estaba perdiendo dinero al momento de su despido y que se contrató al Sr. Luis Arroyo Algorri (señor Arroyo) para realizar sus funciones.

Mediante Orden emitida el 2 de mayo de 2011, el Tribunal de Primera Instancia inicialmente declaró *No Ha Lugar* la Solicitud de Sentencia Sumaria. Como fundamento para su determinación indicó que existía controversia sobre si las razones aducidas para el despido constituían "un mero pretexto" de parte de la peticionaria.

J.F. Montalvo sometió entonces una solicitud de reconsideración, la cual fue eventualmente acogida por el tribunal de instancia. Así pues, el 24 de mayo de 2011 el

foro primario dictó Sentencia mediante la cual reconsideró su decisión anterior y desestimó en su totalidad la Demanda por despido injustificado.[2] Entendió que, a base de todos los escritos sometidos y conforme la evidencia presentada, el despido objeto de este recurso estuvo justificado y respondió a una reorganización provocada por la merma considerable en los ingresos de la empresa. En su Sentencia el juez de instancia hizo referencia a que se despidieron otros empleados conjuntamente con el señor Zapata. Igualmente, dictaminó que no se contrató a un sustituto para realizar las funciones inherentes al puesto del recurrido.

El Tribunal de Primera Instancia también determinó que el señor Zapata no logró rebatir los hechos medulares según consignados por J.F. Montalvo en su moción, conforme lo dispuesto en la Regla 36.3(e) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3(e) (2010). Resolvió, además, que el pago de bonos de productividad no estaba reñido con la reducción en las ventas. De igual manera, rechazó los intentos del señor Zapata de refutar que la empresa estuviese perdiendo dinero al momento de su despido y que no se contrataron nuevos empleados ni un sustituto para su puesto. Sobre este particular, el foro

---

[2] Igualmente, desestimó la reclamación de la Sociedad Legal de Bienes Gananciales, así como la de la esposa del recurrido por no tener fundamento bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a – 185m (2009) (Ley 80).

de instancia resolvió que el señor Zapata no podía, mediante una declaración jurada posterior, contradecir la información previamente admitida por él bajo juramento durante su deposición.

Inconforme, el señor Zapata apeló el fallo en su contra ante el Tribunal de Apelaciones. Alegó que al resolver de esa manera el foro primario descansó en alegaciones carentes de prueba. A la vez, planteó que existían múltiples controversias de hechos esenciales que impedían la resolución sumaria de su reclamación por despido injustificado.

El foro apelativo intermedio revocó la determinación del tribunal de instancia mediante Sentencia emitida el 29 de noviembre de 2011.[3] Resolvió que, aunque los estados de cuenta presentados por J.F. Montalvo evidenciaban una reducción en las ventas de la empresa, el recurrido puso en tela de juicio la necesidad de su despido como parte de una restructuración, lo que exigía la celebración de una vista evidenciaria. El Tribunal de Apelaciones apoyó su dictamen en las alegaciones del recurrido a los efectos de que la compañía continuó reclutando empleados, entre los cuales identificó al señor Arroyo como la persona que lo sustituyó en sus funciones, y que, además, se entregaron

---

[3] La Juez de Apelaciones, Hon. María del Carmen Gómez Córdova, disintió de dicho proceder sin opinión escrita.

bonos de productividad a otros empleados luego de su despido.

El Tribunal de Apelaciones declinó reconsiderar su determinación según solicitado por J.F. Montalvo, propiciando el presente recurso. Como único error, la peticionaria aduce que incidió el foro apelativo intermedio al denegar su Solicitud de Sentencia Sumaria y concluir que existen controversias de hechos materiales en controversia. A esos efectos, sostiene que el recurrido no logró rebatir los hechos medulares según expuestos en su Solicitud de Sentencia Sumaria, por lo que procede desestimar la acción de despido injustificado instada en su contra. Específicamente, plantea que los hechos consignados en la Declaración Jurada del señor Zapata son inapropiados para propósitos de este caso, ya que resultan contrarios al testimonio previamente ofrecido en su deposición.

Expedido el auto de *certiorari* solicitado y contando con la posición de ambas partes, procedemos a resolver.

## II

### Ley 80

La Ley 80, *supra*, fue aprobada con el fin primordial de proteger "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez que otorgue unos

remedios más justicieros y consubstanciales con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido". Exposición de Motivos de la Ley 80, *supra,* Leyes de Puerto Rico, pág. 268; Feliciano Martes v. Sheraton, 182 D.P.R. 368 (2011). Véase, también, Vélez Cortés v. Baxter, 179 D.P.R. 455 (2010), citando a Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001).

Cónsono con lo anterior, se le exige a los patronos el pago de una mesada a favor de aquellos empleados despedidos sin que medie justa causa para ello.[4] Feliciano Martes v. Sheraton, *supra*.

Las circunstancias que constituyen "justa causa" aparecen detalladas en el Artículo 2 de la Ley 80, 29 L.P.R.A. sec. 185b (2009), e incluyen tanto motivos fundamentados en la conducta del empleado como razones de índole empresarial. En cuanto a estas últimas "[s]e contemplan aquí situaciones que no son imputables al obrero pero **que son de tal naturaleza que su despido resulta prácticamente inevitable dentro de las normas usuales y ordinarias que imperan en el manejo de los negocios**…." Informe Conjunto, Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. del S. 1112, 23 de abril de 1975 (énfasis nuestro). Véase, además, Informe

---

[4] Artículo 1 de la Ley 80, 29 L.P.R.A. sec. 185a (2009). La mesada consiste en una indemnización progresiva calculada a base de los años de servicio del empleado cesanteado.

de la Cámara de Representantes, Comisión de Trabajo y Asuntos del Veterano, P. del S. 1112, de abril de 1976. "[P]uede haber justa causa para despedir a un empleado por hechos no imputables a éste y sí al patrono…." R. N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, Ramallo Bros. Printing, Inc., rev. 2005, pág. 120.

De esta manera se reconoce que pueden surgir condiciones en la operación de los negocios que requieran cesantear empleomanía sin que ello necesariamente contravenga las disposiciones de la Ley 80. Según provisto en el articulado antes mencionado, se permiten despidos sin obligación de pagar la mesada cuando la entidad corporativa enfrenta alguna de las siguientes situaciones: (i) el cierre total, temporero o parcial de las operaciones del establecimiento; (ii) **los cambios** tecnológicos o **de reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público, y (iii) **reducciones en empleo que se hacen necesarias debido a reducción en el volumen de** producción, **ventas o ganancias**, anticipadas o que prevalecen al ocurrir el despido. 29 L.P.R.A. sec. 185b(d), (e) y (f), respectivamente.

Estas tres (3) causas "están relacionadas a actuaciones del patrono dirigidas a la administración de

su negocio, y principalmente se presentan por razones de índole económica que surgen según la operación diaria de las empresas". Díaz v. Wyndham Hotel Corp., *supra*, pág. 376. Véase, además, C. Zeno Santiago y V.M. Bermúdez Pérez, Tratado de Derecho del Trabajo, San Juan, Publicaciones J.T.S., 2003, págs. 104-105; R. N. Delgado Zayas, op. cit., pág. 120. A través de este precepto se contemplan escenarios vinculados a la viabilidad del puesto o de la empresa en un momento determinado. Whittenburg v. Col. Ntra. Sra. del Carmen, 182 D.P.R. 937 (2011).

Resulta claro de lo anterior que el Artículo 2(e) de la Ley 80, *supra*, permite despedir empleados sin tener que pagar la compensación fijada por dicho estatuto si esta decisión se toma como parte de una reorganización empresarial que así lo requiere. Acorde con lo anterior, un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide*.

De manera similar, mediante el Artículo 2(f) de la Ley 80, 29 L.P.R.A. sec. 185b(f) (2009), la situación económica provocada por la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar

medidas necesarias para limitar los gastos, tales como disminuir la plantilla laboral. Sin embargo, esta disposición no pretende que toda merma en ventas o ganancias se traduzca en justa causa para un despido. Por el contrario, la misma aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa.

> Bajo la Ley Núm. 50 [de 20 de abril de 1949, 29 L.P.R.A. ant. secs. 183-185, antecesora de la Ley 80] la falta de trabajo y actividad en el establecimiento del patrono era causa justificada para el despido…. Igualmente al amparo de esa ley una baja pronunciada en la producción de un establecimiento o la reducción de ventas o ganancias era, presumiblemente, causa justificada de despido, como lo es por disposición expresa bajo la Ley Núm. 80, *supra*.
>
> Cualquier baja en producción, o en ventas o en ganancias, sin embargo, no justifica el despido. Tal reducción en ventas, ganancias o producción real o prevista, debe ser **significativa a tal grado como para amenazar la estabilidad y solvencia económica del negocio.**

Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, Departamento del Trabajo y Recursos Humanos de Puerto Rico, 21 de septiembre de 2000, pág. 44 (**Guía Revisada**) (nota al calce omitida y énfasis nuestro).

Claro está, para poder justificar el despido bajo cualquiera de estas modalidades el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad, y/o de la alegada

disminución en la producción, ventas o ganancias, según corresponda.

Específicamente, se rechazan bajo el Artículo 2 de la Ley 80, *supra,* actuaciones sin fundamento que no vayan dirigidas a atender asuntos concernientes al bienestar de la gestión empresarial y a la salud fiscal de la empresa. Así lo reconoce el propio estatuto al disponer que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento…." Íd.

Los cambios en la empresa, implantados como parte de una reorganización, según provistos en el Artículo 2(e) de la Ley 80, *supra*, pueden acarrear el despido y el reclutamiento simultáneo de personal. Ello obedece a que las reformas en ocasiones exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas.

Cabe notar que, como parte del proceso de despidos correspondiente a los casos provistos en los incisos (d), (e) y (f) del Artículo 2 de la Ley 80, *supra*, se le requiere a la empresa retener a los empleados de mayor antigüedad condicionado a "que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser

desempeñados por ellos…." Artículo 3 de la Ley 80, 29 L.P.R.A. sec. 185c (2009). Claro está, lo anterior será de este modo, siempre y cuando el empleado de más tiempo en la empresa cuente con las destrezas necesarias para realizar las tareas asociadas con el puesto que pasa a ocupar, o que pueda adiestrarse para realizarlas en un tiempo corto y a un costo mínimo. Guía Revisada, pág. 43.

De igual manera el Artículo 3 de la Ley 80, *supra*, provee para que se le otorgue prioridad a los empleados cesanteados para ocupar aquellos puestos que surjan en la empresa durante los próximos seis (6) meses luego de su despido. Ello, siempre y cuando los nuevos puestos requieran el desempeño de labores iguales o similares a las ejercitadas por el empleado cesanteado al momento de su despido y se encuentren dentro de la misma clasificación ocupacional. El orden a seguir para reclutar nuevos empleados debe adherirse a los mismos criterios de antigüedad consignados en el Artículo 3 de la Ley 80, *supra*.

Dada su naturaleza reparadora, las disposiciones de la Ley 80 deben ser interpretadas liberalmente a favor del trabajador. Vélez Cortés v. Baxter, *supra*; Rivera v. Pan Pepín, 161 D.P.R. 681 (2004). A tales fines, el remedio de la mesada provisto por la Ley 80 tiene como propósito ayudar al trabajador despedido a enfrentar sus necesidades económicas entre tanto se reubica en el mercado laboral.

García Burgos v. A.E.E.L.A., 170 D.P.R. 315 (2007); Díaz v. Wyndham Hotel Corp., *supra*.

En una acción por despido injustificado incoada por un empleado, es el patrono quien tiene el peso de la prueba para establecer que el despido estuvo justificado. Díaz v. Wyndham Hotel Corp., *supra*. Así pues, como parte del esquema de protección laboral implantado a través de la Ley 80, una vez se presenta una acción alegando despido sin justa causa se activa una presunción de que el despido fue injustificado y recae sobre el patrono la obligación de rebatirla. Para ello tiene que probar, mediante preponderancia de la evidencia, los hechos constitutivos de alguno de los fundamentos eximentes de responsabilidad según consignados en el Artículo 2 de la Ley 80, *supra*. Artículo 8(a) de la Ley 80, *supra*, 29 L.P.R.A. sec. 185k(a) (2009). Rivera Figueroa v. The Fuller Brush Co., 180 D.P.R. 894 (2011); Díaz v. Wyndham Hotel Corp., *supra*; Belk v. Martínez, 146 D.P.R. 215 (1998).

Cónsono con lo anterior, es menester que el patrono establezca, igualmente, un nexo causal entre la razón o razones aducidas según provistas en el Artículo 2 de la Ley 80, *supra*, y el despido en cuestión.

> [L]a mera existencia de cambios tecnológicos de producción, de reorganización o la reducción de la producción, ventas o ganancias, entre otros, de por sí no justifican el despido de empleados. Es a la empresa a quien incumbe, por mandato de la ley, demostrar que por esas circunstancias se vio en la necesidad de despedir empleados. En otras palabras, el patrono en todo momento deberá probar la justa causa del despido.

R. N. Delgado Zayas, op. cit., pág. 122 (cita omitida).

De manera que en este caso, para J.F. Montalvo prevalecer en su posición, según propuesta en la Solicitud de Sentencia Sumaria, le toca demostrar que el despido del señor Zapata estuvo justificado conforme a las disposiciones de la Ley 80. Para ello se le exige probar, mediante evidencia incontrovertida, que la cesantía del recurrido no fue producto de un mero capricho o arbitrariedad de su parte, sino que respondió a una reorganización interna motivada por consideraciones de índole económica en función de la disminución en volumen de sus ventas o ganancias.

## III

## Sentencia Sumaria

El mecanismo de sentencia sumaria tiene como finalidad "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales". Const. José Carro v. Mun. Dorado, 186 D.P.R. 113, 128 (2012); Mejías et al. v. Carrasquillo et al., 185 D.P.R. 288 (2012). Conforme a lo dispuesto en la Regla 36.3(e) de Procedimiento Civil de 2009, supra, procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las

hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Consecuentemente, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. Const. José Carro v. Mun. Dorado, supra; Mejías et al. v. Carrasquillo et al., supra; Abrams Rivera v. E.L.A., 178 D.P.R. 914 (2010); Nieves Díaz v. González Massas, 178 D.P.R. 820 (2010). Su utilidad como vehículo para agilizar los procesos judiciales y descongestionar los tribunales resulta indiscutible.

Las Reglas de Procedimiento Civil de Puerto Rico de 2009, 32 L.P.R.A. Ap. V (2010), las cuales son de aplicación a los hechos objeto de este recurso, aportaron cambios importantes en el trámite de las solicitudes de sentencia sumaria dirigidos a facilitar la labor adjudicativa de los tribunales y promover de este modo su utilización. Véase, por ejemplo, Ramos Pérez v. Univisión, 178 D.P.R. 200 (2010).

A estos efectos, y siguiendo lo provisto en las enmiendas a la Regla 56 de Procedimiento Civil Federal en vigor a partir de 2010,[5] y las directrices establecidas en

---

[5]    S. Baicker-McKee, W.M. Janssen y J.B. Corr, Federal Civil Rules Handbook, West, 2011. Véase, además, J.A. Cuevas Segarra, Tratado de Derecho

Continúa…

sus Reglas Locales por algunos tribunales de distrito en la esfera federal,[6] se incorporaron ciertos requisitos de forma aplicables tanto a las solicitudes de sentencia sumaria como a las oposiciones correspondientes, los cuales aparecen detallados en la Regla 36.3 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3 (2010).[7]

---

Procesal Civil, 2da ed., San Juan, Publicaciones J.T.S., Tomo III, 2011, pág. 1038.

[6]     Véase, James Wm. Moore, Moore's Federal Practice, 3ra ed., LEXIS Publishing, T. 11, secs. 56.70[5][b] y [c], págs. 56-149 – 56-152.1 y secs. 56.81[3][a] y [b], págs. 56-182 – 56-185.  Véase, además, L.Cv.R. 56 (D.P.R. 2009 as amended), Federal Local Court Rules, 3rd ed., West Group, Vol. 5, págs. 17-18.

[7]     En lo pertinente, la Regla 36.3 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3 (2010), dispone lo siguiente:

   (a) La moción de sentencia sumaria será notificada a la parte contraria y deberá contener lo siguiente:

                     ….

   (4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal[.]

                     ….

   (b) La contestación a la moción de sentencia sumaria… deberá contener lo siguiente:
                     ….

   (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

   (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal[.]

Continúa…

Así pues, en lo que respecta particularmente a los hechos relevantes sobre los cuales la parte promovente aduce no existe controversia sustancial, ésta viene obligada a desglosarlos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Regla 36.3(a)(4) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3(a)(4) (2010).

Igualmente, la contestación a la moción de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos. Primeramente, recae sobre la parte que responde el deber de citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente.

----

….

(c) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.

(d) Toda relación de hechos expuesta en la moción de sentencia sumaria o en su contestación podrá considerarse admitida si se indican los párrafos o las páginas de las declaraciones juradas o de otra prueba admisible en evidencia donde ésta se establece, a menos que esté debidamente controvertida conforme lo dispone esta regla.

El tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen. Tampoco tendrá la obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en una relación de hechos….

Regla 36.3(b)(2) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3(b)(2) (2010).

De otra parte, puede también el oponente someter hechos materiales adicionales que alegadamente no están en disputa y que impiden se dicte sentencia sumaria. Le compete entonces, similar al proponente, enumerarlos en párrafos separados e indicar la pieza evidenciaria que los apoya con referencia específica al fragmento de ésta en que descansa cada aserción. Regla 36.3(b)(3) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3(b)(3) (2010).

Se dispone para que, de proceder en derecho, el tribunal dicte sentencia sumaria a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada. Regla 36.3(c) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3(c) (2010).

De igual forma, toda relación de hechos propuesta por cualquiera de las partes que se encuentre sustentada según exige dicho precepto podrá considerarse como admitida "a menos que esté debidamente controvertida conforme lo dispone esta regla". Regla 36.3(d) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36.3(d) (2010).

Como parte del nuevo esquema para disponer de una solicitud de sentencia sumaria, se le concede también al tribunal la potestad de excluir aquellos hechos propuestos por cualquiera de las partes que no hayan sido debidamente

numerados o que no tengan correlación específica a la evidencia admisible que supuestamente los sostiene. Regla 36.3(d) de Procedimiento Civil de 2009, *supra*.

Más aún, el juzgador no viene obligado a tomar en cuenta aquellas porciones de declaraciones juradas o de cualquier otra evidencia admisible que no hayan sido expresamente citadas por la parte en la relación de hechos correspondiente de su escrito. Regla 36.3(d) de Procedimiento Civil de 2009, *supra*.

Quiere esto decir que, si la parte contraria se aparta de las directrices expresamente consignadas en el mencionado precepto, entre las que específicamente se encuentra la obligación de aludir al número del hecho propuesto que se pretende contradecir, el tribunal podrá no tomar en consideración su intento de impugnación.

Igualmente, aunque en el proceso de considerar una solicitud de sentencia sumaria el tribunal retiene la discreción de examinar evidencia admisible que obre en los autos, pero que ha sido omitida por las partes, éste **no** viene obligado a hacerlo. Puede, conforme al mecanismo actual, obviar material que las propias partes hayan pasado por alto en sus escritos y resolver estrictamente a base de lo que haya sido presentado acatando el método procesal consignado en la nueva Regla 36.3 de Procedimiento Civil de 2009, *supra*.

Según se desprende de lo anterior, el método recién implantado coloca sobre las partes, quienes conocen de primera mano sus respectivas posiciones, así como la evidencia disponible en el caso, el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene. Se facilita, por lo tanto, el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación.

Es por ello que mediante estas nuevas disposiciones nuestro ordenamiento procesal expresamente le exige a la parte oponente examinar cada hecho consignado en la solicitud de sentencia sumaria y, para todos aquellos que considera que existe controversia, identificar el número del párrafo correspondiente y plasmar su versión contrapuesta fundamentada en evidencia admisible. La numeración no es un mero formalismo, ni constituye un simple requisito mecánico sin sentido. Por el contrario, tiene un propósito laudable, por lo que su relevancia es indiscutible y queda claramente evidenciada luego de una interpretación integral de las enmiendas acogidas en el 2009. De lo contrario, las enmiendas a la Regla 36 de

Procedimiento Civil de 2009, *supra*, no tendrían valor práctico alguno.

Recordemos que las decisiones discrecionales que toma el Tribunal de Primera Instancia no serán revocadas a menos que se demuestre que ese foro abusó de su discreción. Véanse, por ejemplo, VDE Corporation v. F & R Contractors, 180 D.P.R. 21, 41 (2010); y Pueblo v. Rivera Santiago, 176 D.P.R. 559, 580 (2009). El propósito de esa regla consiste en que los foros apelativos no deben pretender administrar ni manejar el trámite regular de los casos ante el foro primario. Es cierto que "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". Rivera y otros v. Bco. Popular, 152 D.P.R. 140, 155 (2000). Por eso, hemos definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". IG Builders et al. v. BBVAPR, 185 D.P.R. 307, 338 (2012) (cita omitida); y Pueblo v. Rivera Santiago, *supra*. De esa manera, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 770 (1977). De igual forma, "no significa

poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". <u>Bco. Popular de P.R. v. Mun. de Aguadilla</u>, 144 D.P.R. 651, 658 (1997) (cita omitida). Véase, además, <u>IG Builders et al. v. BBVAPR</u>, *supra*.

Un tribunal abusa de su discreción:

[C]uando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.

<u>Pueblo v. Rivera Santiago</u>, *supra*, pág. 580.

**IV**

**A. Hechos propuestos por las partes**

Conforme a lo anterior, inicialmente nos toca examinar los hechos según propuestos por las partes en sus respectivos escritos para verificar si, en efecto, el tribunal de instancia actuó correctamente y si se acataron las formalidades dispuestas en la Regla 36.3 de

Procedimiento Civil de 2009, *supra*, según descritas anteriormente.[8]

En su Solicitud de Sentencia Sumaria, J.F. Montalvo sometió los siguientes "Hechos que No están en Controversia" debidamente sustentados:

1. El querellante trabajó en J.F. Montalvo desde el 2002 hasta el 1ero de diciembre de 2010.

2. El querellante fue despedido de J.F. Montalvo debido a una reorganización realizada por la Compañía el 1ero de diciembre de 2010.

3. El querellante admitió que tiene conocimiento de que en la reorganización que se llevó a cabo en J.F. Montalvo el 1ero de diciembre de 2010 se cesantearon a otros empleados.

4. El querellante admitió que entre las personas cesanteadas el 1ero de diciembre de 2010 se encuentra el Dr. José Montalvo quien es el hermano del Presidente de la Compañía, el Sr. Frank Montalvo.

5. El 1ero de diciembre de 2010 también se cesanteó a María de los Ángeles González quien ocupaba la posición de Contralora, Carmen García, quien ocupaba la posición de Secretaria del Gerente General, Diana Ramos, quien ocupaba la posición de Secretaria del querellante y Nayda Rodríguez quien ocupaba la posición de Asistente de Compra.

6. El querellante ocupaba la posición de Coordinador y Ayudante del Presidente para la fecha de su despido.

7. El querellante admitió que era la única persona que ocupaba la posición de Coordinador y Ayudante para la fecha de su despido.

8. El querellante admitió que la posición de Coordinador y Ayudante del Presidente era bien importante y que tenía acceso a los estados financieros de J.F. Montalvo.

9. El querellante admitió que para la fecha de su despido (1ero de diciembre de 2010), J.F. Montalvo

---

[8] Notamos que ambas partes cumplieron con el requisito de identificar la evidencia que sirvió de base a los hechos consignados en sus mociones.

estaba reflejando una reducción en el volumen del negocio.

10. El querellante admitió que en una ocasión durante el año 2010 le informó a Frank Montalvo que había que tomar medidas ya que se estaba perdiendo dinero en la Compañía.

11. El querellante admitió que del año 2008 al 2009 el ingreso neto de J.F. Montalvo bajó de $3,267,705 a $794,787.

12. El querellante no tiene conocimiento si en J.F. Montalvo han contratado a alguien para ocupar su posición de Coordinador y Ayudante del Presidente. A tales efectos, es menester mencionar que Migdalia Peña, Directora del Departamento de Recursos Humanos de la Compañía, declaró bajo juramento que al día de hoy en J.F. Montalvo no se ha contratado a nadie para realizar las funciones que ejercía el querellante en su posición de Coordinador y Ayudante del Presidente.

En su Oposición a la Solicitud de Sentencia Sumaria el recurrido no aludió específicamente a ninguno de los hechos propuestos por J.F. Montalvo antes reseñados. Simplemente se limitó a argumentar que la peticionaria utilizó el pretexto de la merma en ventas y ganancias del negocio para despedirlo y enumeró los siguientes hechos, los cuales denominó como "Hechos Materiales que están en Controversia":

1. El despido del señor Zapata de J.F. Montalvo fue injustificado toda vez que no cumplió con los requisitos establecidos en la Ley 80 del 30 de mayo de 1976 (29 L.P.R.A. 185 *et als*.).

2. J.F. Montalvo dio bonos de productividad a ciertos empleados, luego de haber cesanteado al señor Zapata.

3. J.F. Montalvo no estaba perdiendo dinero al momento de despedir al señor Zapata.

4. J.F. Montalvo contrató empleados luego de haber cesanteado al señor Zapata.

5. J.F. Montalvo contrató los servicios del Sr. Luis Arroyo Algorri para que realizara las funciones que ejercía el señor Zapata.

Ante este escenario procesal, el juez de instancia aceptó como ciertos los doce (12) hechos presentados por J.F. Montalvo como parte de su moción, indicando que el señor Zapata incumplió con las disposiciones de la Regla 36.3 de Procedimiento Civil de 2009, *supra*, "al no discutir los hechos incontrovertidos expuestos por [] J.F. Montalvo en su Sumaria como requiere la Regla en cuestión…." Sentencia del Tribunal de Primera Instancia, pág. 11.

Resulta indiscutible que la parte recurrida no sometió "una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos" según requiere la Regla 36.3(b)(2) de Procedimiento Civil de 2009, *supra*. A tenor con las nuevas disposiciones procesales relativas al trámite de una solicitud de sentencia sumaria, al recurrido no rebatir ninguno de los doce (12) hechos materiales que no están en controversia según formulados por J.F. Montalvo conforme dispone el aludido precepto, éstos podían darse por admitidos y así quedó consignado en la Sentencia emitida por el foro de instancia.

Por consiguiente, las cinco (5) aseveraciones propuestas por el señor Zapata se considerarán en la

medida en que sugieran hechos materiales adicionales que hagan improcedente, como cuestión de derecho, dictar sentencia sumaria según solicitado por J.F. Montalvo. Ello es así puesto que, tal como indicáramos anteriormente, al no refutar los hechos materiales que no están en controversia propuestos por la peticionaria de la forma y manera expresamente provista en la Regla 36.3(b)(2) de Procedimiento Civil de 2009, *supra*, el tribunal puede considerarlos como no controvertidos en virtud de lo dispuesto en la Regla 36.3(c) y (d) de Procedimiento Civil de 2009, *supra*.

El foro primario examinó las cinco (5) relaciones fácticas propuestas por el recurrido y concluyó que éstas no impedían el que se dictase sentencia sumaria. Pasamos entonces a repasar individualmente los hechos enumerados por el recurrido para determinar si, en efecto, los mismos imposibilitan el que se conceda la moción de sentencia sumaria en cuestión.

## 1. Violación de la Ley 80

Primeramente, el recurrido sostiene que su despido fue injustificado porque se incumplió con los requisitos de la Ley 80. No es necesario atender esta aseveración, pues constituye meramente una conclusión de derecho. Bajo esta alegación el recurrido no hace mención de evento o suceso alguno, ni tampoco vincula su planteamiento con prueba admisible que lo apoye.

## 2. Bonos de productividad

En su segunda aseveración el señor Zapata trató de cuestionar la veracidad de la situación económica de la empresa aludiendo al pago de bonos de productividad a ciertos empleados luego de su despido. J.F. Montalvo objetó esta alegación aduciendo que resultaba contraria al testimonio vertido por el recurrido en su deposición. Concretamente planteó que, en respuesta a preguntas específicas del abogado de la peticionaria para que identificara las razones por las cuales alegaba que su despido fue injustificado, el señor Zapata nunca mencionó este fundamento. Ciertamente, como respuesta al interrogatorio que se le hiciera en dicha deposición el señor Zapata se limitó a relatar asuntos relacionados a la contratación de otros empleados, así como la de un supuesto sustituto en sus funciones. No fue hasta que, confrontado con la solicitud de sentencia sumaria de la peticionaria, el señor Zapata trajo a colación por primera vez el asunto de los bonos de productividad. Sin embargo, como parte de su Declaración Jurada en apoyo a su oposición a que se dictara sentencia sumaria en su contra, el señor Zapata no brindó explicación alguna para adelantar esta información por primera vez en dicha oposición, a pesar de que la misma resultaba fundamental a su reclamación de despido sin justa causa.

En la esfera federal un gran número de los tribunales a nivel de circuito de apelaciones consistentemente ha resuelto que le está vedado a una parte intentar suscitar una controversia de hechos materiales en respuesta a una solicitud de sentencia sumaria valiéndose de un testimonio reciente que resulta contrario a una declaración bajo juramento emitida anteriormente, si no se provee una explicación para la contradicción entre ambas. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d, sec. 2726; 11 Moore's Federal Practice, 3rd Ed., sec. 56.94[5][a]; J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Publicaciones J.T.S., Tomo III, 2011, pág. 1079. Véanse, por ejemplo, White v. Baptist Mem'l Health Care Corp., 699 F.3d 869 (6th Cir. 2012); Kernel Records Oy v. Mosley, 694 F.3d 1294 (11th Cir. 2012); Yeager v. Bowlin, 693 F.3d 1076 (9th Cir. 2012); Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105 (1st Cir. 2006); Beckel v. Wal-Mart Assoc., 301 F.3d 621 (7th Cir. 2002).

Esta norma ha sido denominada como "sham affidavit doctrine", ya que el propósito de la declaración posterior es dar una versión simulada, ficticia o falsa de hechos medulares con el propósito específico de impedir que se dicte sentencia sumaria en su contra.

El Tribunal Supremo de los Estados Unidos reconoció el uso generalizado de esta práctica, resumiendo la misma de la siguiente manera:

> The lower courts… have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity….

Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999) (citas omitidas).

Así pues, en el proceso de disponer de una solicitud de sentencia sumaria no podrá el juzgador tomar en consideración una declaración jurada suscrita por la parte adversa si su contenido es claramente incompatible con una versión de los hechos dada anteriormente y el exponente no aclara, a satisfacción del tribunal, la discrepancia entre las dos (2) posiciones. Dicho de otro modo, se rechazará una declaración subsiguiente si la inconsistencia entre las dos (2) declaraciones resulta patente y no se ofrece una explicación adecuada para la nueva versión.

Claro está, este mecanismo debe utilizarse con prudencia y limitarse únicamente a situaciones en las que la declaración inicial contiene respuestas inequívocas a preguntas claras, precisas y libres de ambigüedad sobre un hecho medular. Yeager v. Bowlin, *supra*.

> A … court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact…. The sham affidavit rule should be applied sparingly, … and only when the earlier deposition testimony consists of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact….

Kernel Records Oy v. Mosley, *supra*, pág. 1300 n. 6 (citas, comillas y corchetes omitidos). Véase también Yeager v. Bowlin, *supra*; Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., *supra*. Igualmente, se requiere que la inconsistencia entre las dos (2) versiones sea una manifiesta o patente. Van Asdale v. Int'l Game Tech., 577 F.3d 989 (9th Cir. 2009).

Lo anterior no impide que la parte adversa elabore, explique o clarifique respuestas a preguntas formuladas durante su deposición por el abogado de la parte proponente de la sentencia sumaria. Tampoco se refiere a inconsistencias de poca trascendencia que resultan de discrepancias o errores de buena fe o de evidencia descubierta posteriormente. Íd.

Esta doctrina incide directamente en el procedimiento de sentencia sumaria según provisto en el ordenamiento procesal. Permitir a una parte utilizar un subterfugio para retractarse de su testimonio bajo juramento, con el único propósito de evitar que se dicte sentencia sumaria, resulta contrario al objetivo que persigue la Regla 36 de Procedimiento Civil de 2009, *supra*. Tampoco se adelanta el objetivo de la Regla 36 de Procedimiento Civil de 2009, *supra*, cuando una parte brinda una respuesta a medias en una deposición, reteniendo información pertinente, para luego presentarla de forma acomodaticia en la oposición a una moción de sentencia sumaria. Cónsono con lo anterior,

se ha reconocido que esta doctrina resulta vital para preservar la utilidad del mecanismo de sentencia sumaria. Yeager v. Bowlin, *supra*; Van Asdale v. Int'l Game Tech., *supra*.

Habida cuenta de la importancia que reviste la utilización del procedimiento de sentencia sumaria en nuestro sistema judicial, juzgamos conveniente aplicar estos principios en aquellas situaciones en que una parte procura ingeniarse supuestos hechos materiales contrarios a un testimonio previo ofrecido bajo juramento, con el propósito de impedir que se dicte sentencia sumaria en su contra.

Ahora bien, retomando los eventos objeto del recurso ante nos, y conforme señalado, a pesar de las preguntas del abogado de J.F. Montalvo solicitándole específicamente que indicara las razones para alegar que su despido fue injustificado, el recurrido **nunca** mencionó en su deposición el tema de los bonos de productividad. Como respuesta al interrogatorio se limitó a relatar asuntos relacionados a la contratación de otros empleados, así como la de un supuesto sustituto en sus funciones. Tampoco ofreció como parte de su Declaración Jurada explicación alguna para adelantar esta información por primera vez en su Oposición a la Solicitud de Sentencia Sumaria, a pesar de que la misma resultaba fundamental a su reclamación de despido sin justa causa.

La equidad requiere que los litigantes actúen de buena fe en el trámite judicial y que durante el proceso de descubrimiento de prueba la información fluya abiertamente para permitirle a las partes prepararse adecuadamente y así evitar sorpresas. No hay cabida en el litigio para estrategias dirigidas a prevalecer a toda costa sin referencia a la justicia.[9] Es esencial que el procedimiento sea uno justo y permita que salga a relucir la verdad a su debido tiempo, haciendo posible que se disponga oportunamente por la vía sumaria de aquellos casos en que no existe controversia de hechos materiales. De esta manera, se descongestiona el calendario del tribunal al descartar aquellas reclamaciones cuya resolución no precisa de un juicio.

Este caso gira precisamente sobre la existencia o no de causa justificada para el despido del señor Zapata. Resultaba imprescindible, por lo tanto, que éste respondiera completa y cabalmente al interrogatorio interpuesto por el abogado de la parte contraria, el cual

---

[9]   Así lo reconocimos recientemente en Valencia Mercader v. García García, 2012 T.S.P.R. 172, 187 D.P.R. ___ (2012), al citar con aprobación las siguientes expresiones contenidas en J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Publicaciones J.T.S., 2011, Tomo III, pág. 835:

> Un amplio y liberal descubrimiento de prueba es la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia que tanto mina la fe del pueblo en el sistema judicial…. Las reglas que encaminan el descubrimiento de prueba procuran que el juicio sea menos un juego de la gallinita ciega y más una contienda justa en que los hechos sean descubiertos en la más amplia extensión posible. La justicia no es un juego, ni un deporte, sino una empresa formal a ser conducida seriamente….

Véase, además, E.L.A. v. Casta, 162 D.P.R. 1, 9 (2004); General Electric v. Concessionaires, Inc., 118 D.P.R. 32, 38 (1986).

tenía una conexión directa con la controversia medular del caso. Como corolario a lo anterior, venía obligado el recurrido a dar a conocer todos y cada uno de sus fundamentos para alegar violación de la Ley 80 en respuesta a preguntas directas e inequívocas a esos fines.

A base de lo anterior concluimos que, para efectos de disponer de la Solicitud de Sentencia Sumaria sometida por J.F. Montalvo, corresponde en este caso prescindir de la alegación propuesta por el recurrido de que se repartieron bonos de productividad en la empresa luego de su despido. El señor Zapata omitió esta información en sus respuestas durante la toma de su deposición y, posteriormente, no adelantó razón alguna para revelarla por vez primera en su respuesta a la moción de sentencia sumaria.[10]

### 3. Ganancias

Aduce el recurrido como defensa adicional que J.F. Montalvo no estaba operando con un déficit presupuestario al momento de su despido. Sin embargo, el Artículo 2 de la Ley 80, *supra*, no exige que se esté operando con

---

[10] No obstante, aprovechamos esta oportunidad para aclarar que el mero hecho de que un patrono que se ve obligado a despedir empleados como parte de una reorganización de su empresa por razones económicas decida incentivar a aquellos que permanecen laborando, utilizando los ahorros producto de tal reorganización, no necesariamente contraviene las disposiciones de la Ley 80. Y es que, al reducirse la plantilla laboral, los empleados restantes de ordinario tendrán que asumir funciones adicionales a su cargo para mantener la empresa a flote. Igualmente, se les exigirá un mayor desempeño y/o asumir mayores responsabilidades para superar situaciones de crisis, en gestiones dirigidas a la viabilidad de los negocios. Véanse, Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 376 (2001); Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, Departamento del Trabajo y Recursos Humanos de Puerto Rico, 21 de septiembre de 2000, pág. 44; C. Zeno Santiago, El despido y la política social en nuestro estado de derecho, 34 Rev. Jur. U.I.P.R. 213, 224 (2000).

pérdidas como requisito para su aplicación. Lo que sí requiere la aludida disposición es una **reducción significativa**, ya sea en el volumen de producción, ventas o ganancias del negocio a tal grado que pueda verse afectada la continuidad de las operaciones de la empresa.

Conforme a la evidencia sometida no controvertida, entre el 2008 y 2009 el ingreso neto de J.F. Montalvo disminuyó de tres millones doscientos sesenta y siete mil setecientos cinco dólares ($3,267,705) a setecientos noventa y cuatro mil setecientos ochenta y siete dólares ($794,787), es decir, alrededor de un setenta y seis (76%) por ciento. En el contexto de este caso no vemos cómo una pérdida económica tan significativa, atada a su vez a la disminución en ventas de la empresa, no cae dentro de la definición de justa causa esbozada en dicha disposición. Es precisamente este tipo de situación la que se contempla como constitutiva de justa causa eximente del pago de mesada.

De otra parte, conforme a los hechos no controvertidos consignados por la parte peticionaria, el señor Zapata reconoció que su posición como Coordinador y Ayudante del Presidente era una importante y le permitía acceso a los estados financieros de J.F. Montalvo. Igualmente, admitió que para la fecha de su despido la empresa estaba reflejando una reducción en el volumen del negocio y que durante el 2010 le informó al entonces

Presidente de la Compañía que era necesario tomar medidas porque se estaba perdiendo dinero.

Concluimos, por lo tanto, que esta alegación no es impedimento para que se concediera la sentencia sumaria solicitada.

### 4. Señor Arroyo como sustituto del recurrido

Alega el recurrido que J.F. Montalvo contrató los servicios del señor Arroyo para que realizara sus funciones como Coordinador y Ayudante del Presidente mientras laboró en dicha empresa. El foro primario descartó esta aseveración utilizando como fundamento la admisión del señor Zapata durante su deposición, a los efectos de que desconocía si se había contratado a un sustituto para ocupar su antigua posición en la empresa. Asimismo, el juez de instancia apuntó a la declaración jurada de la Directora de Recursos Humanos de J.F. Montalvo quien expresamente confirmó que no se empleó a persona alguna para realizar las funciones del recurrido. Coincidimos con la apreciación del tribunal de instancia en este respecto.[11]

---

[11]     Notamos que, aunque la relación de hechos propuesta por el señor Zapata bajo el renglón número cinco (5) resulta directamente contraria a la formulación número doce (12) según sometida por J.F. Montalvo en su Solicitud de Sentencia Sumaria, esta última no fue controvertida acatando el procedimiento exigido por la Regla 36.3 de Procedimiento Civil de 2009, *supra*, ya que, en su contestación, el recurrido no hizo referencia expresa al número específico del párrafo que intentaba rebatir. En vista de ello, el tribunal primario no venía obligado a considerar los hechos planteados por el recurrido bajo el inciso número cinco (5).

Ya anteriormente explicamos que queda a discreción del tribunal primario excluir alegaciones cuando se incumple con los rigores de la Regla 36.3 de Procedimiento Civil de 2009, *supra*, como en efecto sucedió en este caso. Precisamente, el juez de instancia así lo reconoció en su Sentencia al indicar que tomaba por bueno los hechos identificados por J.F. Montalvo por no haberse refutado éstos conforme indica dicho precepto procesal.

Por lo tanto, damos por admitido lo consignado en el párrafo número doce (12) de los hechos materiales que no están en controversia según propuestos por la parte peticionaria, a los efectos de que no se contrató a otra persona para realizar las labores del señor Zapata en su puesto como Coordinador y Ayudante del Presidente.[12]

---

[12]    Una vez despedido un empleado por razones económicas o empresariales, según provisto en el Artículo 2 de la Ley 80, 29 L.P.R.A. sec. 185b (2009), el hecho de que sus funciones se le asignen a otros empleados no equivale a una sustitución en el empleo.    Una reorganización empresarial forjada como vehículo para impulsar económicamente un negocio y sacarlo de la situación precaria en la que se encuentra puede válidamente conllevar la eliminación de puestos para reducir costos y a la vez la redistribución de esas funciones entre uno o varios de los empleados restantes.

Igualmente, en el ámbito federal se ha reconocido que, en los casos de alegado discrimen imputado a una reducción laboral, o "reduction in force", no se entiende remplazada una persona despedida por el mero hecho de que sus labores se distribuyan entre otros empleados laborando para la empresa.    A esos efectos, se ha indicado lo siguiente:

> [A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.    A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties….

Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 265 (6th Cir. 2010) (citando a Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)). Véase, además, Geiger v. Tower Auto, 597 F.3d 614, 623 (6th Cir. 2009).

### 5. Empleados contratados

Por último, el recurrido expone que luego de su despido la empresa contrató a otros empleados. Pretende de este modo cuestionar las razones de índole económica y de reorganización que adelantó J.F. Montalvo como justificación para cesantearlo.[13] Acorde con la deposición del señor Zapata, según indicáramos, se trata de tres (3) empleados destinados a ocupar los siguientes puestos: Contralor, Auditor Interno y Director de Seguridad.

Surge de la evidencia no controvertida que el recurrido laboró para J.F. Montalvo hasta diciembre de 2010. Para esa fecha el señor Zapata fue cesanteado conjuntamente con otros cinco (5) empleados como parte de un proceso de reorganización efectuado por la empresa.

La reducción en empleomanía respondió a una merma significativa en los ingresos de la compañía, cónsona con el Artículo 2(f) de la Ley 80, *supra,* situación que le era conocida al recurrido. A esos efectos, éste admitió haberle informado al Presidente de J.F. Montalvo durante el 2010 que era preciso tomar medidas porque se estaba perdiendo dinero. Además, no se reclutó a otro empleado

---

[13] Advertimos que en ningún momento el recurrido ha alegado tener algún derecho prioritario sobre otros empleados que fueron retenidos por J.F. Montalvo a base del criterio de antigüedad provisto en el Artículo 3 de la Ley 80, 29 L.P.R.A. sec. 185c (2009). Tampoco planteó en el recurso de epígrafe tener derecho a la reposición consignada en ese artículo y que, por ende, se menoscabó su derecho de preferencia cuando la empresa reclutó personal para los puestos de Contralor, Auditor Interno y/o Director de Seguridad.

para la plaza que el señor Zapata ocupó, ni se contrató personal nuevo para ejercer sus funciones.

Dadas las circunstancias presentes en este caso, resolvemos que la contratación de las tres (3) personas antes mencionadas destinadas a ocupar los puestos de Contralor, Auditor Interno y Director de Seguridad no se encuentra necesariamente reñida con el concepto de justa causa en la vertiente que nos ocupa. Opinamos que, bajo este escenario fáctico, la Ley 80 le otorga a la empresa cierto grado de flexibilidad para buscar alternativas frente al decrecimiento vertiginoso en el ritmo de sus ventas y ganancias. Ciertamente no es función de los tribunales administrar los negocios ni aconsejar a los directores de éstos cómo manejar los asuntos de su empresa cuando enfrentan retos económicos serios como en el caso que nos ocupa.[14] Nuestro rol se limita a asegurar que se

---

[14]    De igual manera se han expresado los tribunales federales al atender casos de despido de empleados por razones discriminatorias donde están de por medio decisiones empresariales. En esas situaciones se le ha concedido a los patronos un amplio margen de discreción en aquellos asuntos atinentes al manejo de sus negocios. Según señalado por la jurisprudencia, no corresponde a los tribunales actuar como un súper departamento de recursos humanos y verificar la sensatez de las explicaciones propuestas como defensa:

> Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a "super-personnel department," and it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant – as long as those decisions were not made with a discriminatory motive…. That is true no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers….

Álvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) (citas y comillas omitidas). Véanse, además, Kasten v. Saint-Gobain Performance Plastics, Corp., 703 F.3d 966 (7th Cir. 2012); Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31 (1st Cir. 2012); Apsley v. Boeing Co., 691 F.3d 1184 (10th Cir. 2012); Magnus v. St. Mark United Methodist Church, 688

Continúa…

cumpla con lo dispuesto en la ley, que sin duda permite una reorganización empresarial con nuevo personal para ejercer aquellas funciones que se tornen relevantes a la luz de las circunstancias imperantes en un momento determinado.

Por lo tanto, es forzoso concluir que, lejos de ser un capricho infundado de su patrono, la cesantía del recurrido formó parte de una reorganización empresarial dirigida a atender la pérdida de ingresos como resultado de la reducción en el volumen de negocios que enfrentaba dicha entidad para el momento de su despido. Es decir, el concepto de justa causa está atado a consideraciones que atañen al manejo de la empresa. En vista de ello, la decisión de despedir al señor Zapata se encuentra claramente cobijada dentro de las modalidades de justa causa provistas en el Artículo 2(e) y (f) de la Ley 80, *supra*. El señor Zapata, por otro lado, no logró rebatir apropiadamente los hechos materiales que no están en controversia según sustentados por la peticionaria. Nada impide disponer de reclamaciones laborales mediante el mecanismo de sentencia sumaria cuando se configuran las exigencias consignadas en nuestro ordenamiento procesal civil tal y como sucede en este caso. <u>Ramos Pérez v. Univisión</u>, *supra*. Por consiguiente, erró el Tribunal de Apelaciones al resolver que existían controversias de

---

F.3d 331 (7th Cir. 2012); <u>Lee v. City of Columbus, Ohio</u>, 636 F.3d 245 (6th Cir. 2011); <u>Meléndez v. Autogermana, Inc.</u>, 622 F.3d 46 (1st Cir. 2010).

hechos materiales que impedían disponer de la Solicitud de Sentencia Sumaria a favor del promovente y revocar la determinación del Tribunal de Primera Instancia. El foro primario no abusó de su discreción.

**V**

A base de lo anteriormente indicado, se revoca la Sentencia del Tribunal de Apelaciones de 29 de noviembre de 2011.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| JOSÉ J. ZAPATA BERRÍOS y la Sociedad de Bienes Gananciales constituida por éste y LUZ MARÍA RIVERA ROLÓN<br><br>Recurridos<br><br>v.<br><br>J.F. MONTALVO CASH & CARRY, INC.<br><br>Peticionaria | Núm.: <u>CC-2012-0152</u> | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 27 de agosto de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones de 29 de noviembre de 2011.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta disiente con opinión escrita. El Juez Asociado señor Estrella Martínez disiente con opinión escrita, a la que se unen el Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| José J. Zapata Berríos y la Sociedad Legal de Bienes Gananciales constituida por éste y Luz María Rivera Colón<br><br>Recurridos<br><br><br>v.<br><br><br>J.F. Montalvo Cash & Carry, Inc.<br><br>Peticionaria | | CC-2012-152 |

Opinión disidente emitida por la Jueza Asociada señora Fiol Matta

En San Juan, Puerto Rico, a 27 de agosto de 2013.

La Opinión que emite hoy el Tribunal establece una norma preocupante no sólo para casos laborales sino para controversias de todo tipo.[15] Mediante una interpretación restrictiva sobre las formalidades que propone la Regla 36 de Procedimiento Civil para facilitar la consideración de

---

[15] Los hechos del caso están resumidos en la Opinión del Tribunal, por lo que no los expondremos nuevamente.

una solicitud de sentencia sumaria, la Opinión deja atrás el principio cardinal y firmemente establecido en nuestro ordenamiento jurídico sobre el mecanismo de sentencia sumaria: **que esta se dicta tan solo cuando no existen hechos materiales en controversia.**

La Opinión del Tribunal promueve el que se puedan resolver sumariamente casos en los que realmente hay controversia sobre hechos esenciales. Deja a discreción del juzgador de instancia el dar por admitidos hechos refutados por la parte promovida, si esta no cumple con los elementos de forma, según interpretados por la mayoría, en el nuevo ordenamiento procesal civil. La postura mayoritaria parece no exigir que el tribunal de instancia aplique automáticamente los requisitos de forma, pero le permite a ese foro obviar discrecionalmente evidencia admisible contenida en el expediente, si las partes no hacen referencia expresa a ella. Esto contraviene el requisito, que también fija la nueva norma procesal, de que solo procede la disposición sumaria cuando la ausencia de controversias de hechos materiales surge de todos los documentos.

No hay duda que, sin el aval que hoy le brinda la Opinión mayoritaria, este proceder constituiría un abuso de discreción que conllevaría su revocación por los foros apelativos. No obstante, con la bendición del Tribunal Supremo ya no se abusa de la discreción judicial cuando se dicta sentencia sumaria aunque la totalidad del expediente revele que el caso no lo amerita. Por eso, tiene razón el Juez Asociado Estrella Martínez al expresar en su Opinión disidente que la mayoría de este Tribunal le ha dado entrada "por la cocina" al automatismo en la aplicación de los requisitos de forma adoptados en la Regla 36.3 (a)-(d) de Procedimiento Civil.

Reiteradamente, hemos resuelto que se puede dictar sentencia sumariamente, es decir, sin necesidad de celebrar una vista

evidenciaria, cuando los documentos no controvertidos revelan que no hay que dirimir disputas sobre los hechos.[16] Sin embargo, según la Opinión, si la parte que se opone a que se dicte sentencia sumaria no cumple con ciertas formalidades al identificar los hechos que alega que están en controversia, se pueden dar por admitidos, automáticamente, los hechos que el promovente indicó que no estaban en controversia aunque la parte opositora haya, en efecto, alegado y evidenciado que hay controversia sobre hechos materiales. Tengo que disentir de esa interpretación.

I

Aunque la sentencia sumaria puede ser un recurso útil para aligerar la tramitación de un caso, su uso está limitado a casos en los que los tribunales estén totalmente convencidos de que un juicio plenario sería innecesario. Después de todo, el objetivo de proveer una solución más rápida y económica no puede ir por encima del fin primordial de los procesos judiciales: obtener una solución justa.[17] Por eso, este mecanismo sólo puede utilizarse cuando su "promovente ha establecido su derecho con claridad y ha quedado demostrado que el promovido no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba".[18]

Hemos establecido que, al analizar una solicitud de sentencia sumaria, los tribunales de instancia deben: 1) examinar estrictamente

---

[16] Reglas 36.1 y 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V; Const. José Carro v. Mun. Dorado, 186 D.P.R. 113, 128 (2012); Neca Mortgage Corp. v. A&W Dev. S.E., 137 D.P.R. 860, 869 (1995).

[17] PFZ Props. Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 912 (1994).

[18] Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193, 211 (2006).

la petición y los documentos que la acompañan, junto a la moción en oposición **y todos los documentos que obran en el expediente del recurso**, y 2) determinar si quien se opone a la sumaria controvirtió algún hecho material o hay alegaciones de la demanda que no fueron refutadas en la solicitud de sentencia sumaria. Antes de conceder este remedio discrecional, el tribunal tiene que asegurarse de que no existen hechos esenciales controvertidos, no hay alegaciones afirmativas del demandante sin refutar, no surgen controversias materiales de los documentos presentados y la resolución sumaria procede como cuestión de derecho.[19]

Cuando algún hecho material y esencial está legítimamente controvertido, no debe dictarse sentencia sumaria. La razón es evidente y la hemos reiterado en numerosas ocasiones: la obligación de proteger el derecho al "día en corte", que es fundamental en nuestro sistema. Por eso, en la evaluación que hace el tribunal, cualquier duda sobre los hechos en controversia, por más leve que sea, debe resolverse en contra de la parte que solicita la resolución sumaria, permitiendo que la parte que se opone tenga un juicio en su fondo.[20] Además, a pesar de que se aconseja a la parte que se opone a la solicitud de sentencia sumaria que presente documentos que pongan en controversia los hechos alegados por el promovente, el que no se presente esa evidencia no implica necesariamente que debe dictarse sentencia sumaria.[21] Por el contrario, el juzgador **siempre** tiene que

_____

[19] Piovanetti v. S.L.G. Touma, S.L.G. Tirado, 178 D.P.R. 745, 775 (2010); Vera v. Dr. Bravo, 161 D.P.R. 308, 333-334 (2004).

[20] Bonilla Medina v. P.N.P., 140 D.P.R. 294, 304 (1996); Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 781 (1992).

hacer un análisis cabal de todas las alegaciones y la evidencia del caso antes de determinar que procede resolverlo por la vía sumaria.

La Regla 36 de Procedimiento Civil "tiene el propósito de aligerar la tramitación de los casos y facilitar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas sobre hechos materiales".[22] Para ello, permite que una parte solicite al tribunal que dicte sentencia a su favor, mediante una moción en la cual "demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes".[23]

En la revisión más reciente de las Reglas de Procedimiento Civil de Puerto Rico, se añadieron unas normas sobre el formato y el contenido que deben tener la solicitud de sentencia sumaria y la oposición a ésta. Estas tienen como **único** objetivo facilitar la evaluación y adjudicación de las solicitudes de sentencia sumaria. Sobre la contestación a una moción de sentencia sumaria, que es lo que nos concierne en este recurso, la Regla 36.3 provee lo siguiente:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
>
>> (1) lo indicado en los subincisos (1), (2) y (3) del inciso (a) de esta regla;[24]

---

[21] González Aristud v. Hosp. Pavía, 168 D.P.R. 127, 138 (2006); Luan Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 652, 666 (2000); Cuadrado Luego v. Santiago Rodríguez, 126 D.P.R. 272, 281 (1990).

[22] Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico, Informe de Reglas de Procedimiento Civil, marzo de 2008 [Informe], pág. 396.

[23] Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

[24] La Regla 36.3 (a) de Procedimiento Civil, 32 L.P.R.A. Ap. V, lee:

Continúa…

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal, y

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

(c) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte

---

(a) La moción de sentencia sumaria será notificada a la parte contraria y deberá contener lo siguiente:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra **si procede**.

(d) Toda relación de hechos expuesta en la moción de sentencia sumaria o en su contestación **podrá** considerarse admitida si se indican los párrafos o las páginas de las declaraciones juradas o de otra prueba admisible en evidencia donde ésta se establece, **a menos que esté debidamente controvertida** conforme lo dispone esta regla.

El tribunal **no tendrá la obligación** de considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen. Tampoco tendrá la obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en una relación de hechos.

(e) La sentencia solicitada será dictada inmediatamente **si** las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia **demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.**

El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito.

Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda **sometida para la consideración del tribunal.**[25]

El Comité Asesor Permanente de Reglas de Procedimiento Civil "entendió importante expresar en la regla los requisitos sobre el contenido de la solicitud de sentencia sumaria y su correspondiente contestación, **porque ello facilita el trámite de su consideración** ante el tribunal. Proveer a los jueces con toda la información necesaria

_____

[25] Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

para que puedan realizar una determinación, en un mismo escrito, facilita su labor y promueve que estos asuntos se resuelvan con mayor rapidez".[26] Es evidente que esta norma tiene el único propósito de facilitar el trabajo de los jueces y las juezas.[27] No pretende afectar los derechos de las partes cuando no se ciñan a las especificaciones de formato y contenido de la Regla 36.3 (a) y (b), pues, antes de dictar sentencia sumaria, el tribunal **siempre analizará la totalidad del expediente** para asegurarse de que no existen controversias de hechos materiales y de que la decisión solicitada procede en derecho. Así lo dispone nuestra jurisprudencia sobre el mecanismo de sentencia sumaria y lo establece la Regla 36.3 (c) al aclarar que, cuando la oposición a la petición de sentencia sumaria no sea tan detallada y específica como su solicitud, se dictará la sentencia sumaria **si procede**.

Asimismo, teniendo en mente que la concesión de un dictamen sumario es discrecional, la Regla 36.3 (d) le da la potestad al juzgador de considerar admitidas las relaciones de hechos sustentadas con documentos que no hayan sido controvertidas. También, le brinda la opción de descartar hechos que no están apoyados por prueba identificada. No obstante, el tribunal no tiene la obligación de admitirlos o descartarlos, sino la alternativa de hacerlo; su determinación dependerá de la evaluación del expediente del caso a la

----

[26] (Énfasis suplido.) Informe, *supra*, pág. 403.

[27] J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, 2da ed., Publicaciones JTS, 2011, Tomo III, pág. 1054; F. Hernández Denton, *En ocasión de la presentación de las Nuevas Reglas de Procedimiento Civil en la Academia Judicial Puertorriqueña*, San Juan, 28 de enero de 2010, pág. 18:

http://www.ramajudicial.pr/sistema/supremo/acrobat/Mensaje-presentacion-nuevas-reglas-proc-civil-en-la-academia-judicial_28-enero-2010_.pdf.

luz del fin de la sentencia sumaria de proveer una solución rápida cuando no existen controversias de hechos y sólo resta aplicar el derecho. La Regla reconoce, de esta manera, el ejercicio de la función adjudicativa. El tribunal, incluso, tiene la potestad de denegar la solicitud de sentencia sumaria o posponer su consideración para concederle oportunidad a la parte contra quien se presenta la moción para hacer un descubrimiento de prueba adecuado, que le permita conseguir evidencia o tomar declaraciones para preparar su oposición.[28]

Más aún, el efecto de no contestar una petición de sentencia sumaria es que la solicitud queda sometida para la consideración del tribunal. No se concede automáticamente la petición ni quedan admitidos los hechos propuestos y no rebatidos, sino que se analiza **toda la prueba** que obra en el expediente.[29] En su informe, el Comité destacó que "el que la parte promovida no presente prueba que controvierta la presentada por el promovente no garantiza que proceda dictarse sentencia sumaria. Esto se justifica porque en aquellos casos en que no exista una clara certeza sobre los hechos importantes y pertinentes de la controversia, no procede una sentencia sumaria". **Resulta ilógico que el resultado de oponerse a la moción de la parte**

---

[28] "Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración, concediéndole a la parte promovida un término razonable para que pueda obtener declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia o dictar cualquier otra orden que sea justa". Regla 36.6 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

[29] Regla 36.3 (e) de Procedimiento Civil, 32 L.P.R.A. Ap. V.

**contraria sin ceñirse al formato sugerido sea más perjudicial que el de no oponerse.**

Todo esto demuestra que, contrario a lo que sugiere la Opinión del Tribunal, las enmiendas a nuestro ordenamiento procesal no alteraron el principio de que una sentencia sumaria no procede cuando existen dudas sobre la existencia de hechos esenciales en controversia, irrespectivamente de la manera en que se expongan los hechos.

Sin embargo, la Opinión, contra toda lógica, convierte las especificaciones sobre **la forma** de la oposición a la sentencia sumaria en el requisito esencial que tiene que observar el tribunal para admitir hechos como no controvertidos y resolver sumariamente. Así, establece que, si no se cumple con todas las formalidades de la Regla 36.3 (b), se podrá entender que no se rebatieron los hechos presentados por el promovente y estos se podrán dar por admitidos, aunque el promovido haya identificado hechos para controvertir los que indicó el promovente, pues, al no exponerse del modo que dispone la regla, estos se podrán tener por no puestos.

A

Acorde a esta nueva doctrina, la Opinión resuelve que los hechos enumerados por J.F. Montalvo no están en controversia porque el señor José Zapata no los refutó uno por uno, a pesar de que el señor Zapata incluyó en su oposición una lista de los hechos materiales que entiende que están en controversia y acompañó cada uno con la identificación de la prueba que los sostiene. O sea, si el señor Zapata hubiera hecho una enumeración de 12 puntos y dentro de estos hubiese incluido los cinco hechos que identificó como controvertidos, habrían hechos en controversia, pero, como los incluyó con una enumeración independiente, se entiende que no los refutó. Esta interpretación, además de ser sumamente restrictiva en contra de la

parte que se opone a la sentencia sumaria, inserta en nuestro sistema un formalismo anacrónico. En fin, alienta a los foros de instancia a resolver los casos dejándose llevar por cuestiones de forma en lugar de resolverlos por el contenido de las mociones. En esta época, ello no tiene cabida en un tribunal de justicia.

En este caso, el señor Zapata incluyó en su oposición toda la información que requiere la Regla 36.3 (b). En la sección de Introducción, expuso brevemente las alegaciones de las partes, los asuntos litigiosos y la reclamación sobre la cual se estaba solicitando sentencia sumaria, además del tracto procesal del caso. En la sección de Hechos materiales que están en controversia, enumeró cinco hechos; cuatro de ellos indicaban las líneas de su deposición tomada por J.F. Montalvo en las que se encontraba lo expuesto y uno se apoyaba con una declaración jurada que anejó. Aunque no especificó a qué hecho de la lista de la parte promovente correspondía cada uno de los suyos, los hechos identificados referían a los que había presentado J.F. Montalvo en su moción. El hecho en controversia #1 del señor Zapata es que su despido fue injustificado según la Ley 80, lo que corresponde al hecho no controvertido #2 de J.F. Montalvo, que señala que una reorganización de la compañía fue la justa causa para el despido, una de las razones que identifica la Ley 80 para justificar los despidos. Los hechos en controversia #2 y #3 del señor Zapata sobre la entrega de bonos de productividad y los ingresos de la empresa corresponden a los hechos no controvertidos #9, #10 y #11 de J.F. Montalvo sobre la reducción de ingresos en el negocio. Asimismo, los hechos en controversia #4 y #5 del señor Zapata sobre la contratación de otros empleados luego de su despido para realizar sus funciones refieren al hecho no controvertido #12 de J.F. Montalvo respecto a que no se había contratado a otra persona para llevar a cabo las funciones del señor Zapata. Por otro lado, en la sección de Hechos materiales que no están en controversia de la moción en oposición a la solicitud de sentencia sumaria, el señor Zapata incluyó

los hechos no controvertidos #1 y #6 propuestos por J.F. Montalvo sobre el tiempo que llevaba en el empleo y el puesto que ocupaba y añadió otro hecho sobre el salario que devengaba cuando fue despedido. En la última sección, el opositor discutió extensamente el derecho aplicable a base del cual entendía que no se debía dictar sentencia sumaria en su caso.[30]

El contenido de la moción en oposición era adecuado para que un tribunal pudiera hacer su evaluación sobre si procedía resolver el caso por la vía sumaria o no. De hecho, la jueza del tribunal de instancia que atendió el caso declaró sin lugar la solicitud de sentencia sumaria luego de evaluar la petición y la moción en oposición, porque existía controversia sobre la razón del despido.[31] Sin embargo, luego de que J.F. Montalvo presentara una moción en la cual indicó que el foro de instancia no cumplió con su deber de determinar qué hechos no estaban en controversia y cuáles estaban controvertidos de buena fe en su decisión de denegar la resolución sumaria,[32] la jueza reconsideró su dictamen y emitió otra resolución en

---

[30] Solicitud de Sentencia Sumaria de 15 de marzo de 2011, Apéndice del Certiorari, págs. 6-21; Oposición a Solicitud de Sentencia Sumaria de 19 de abril de 2011, Apéndice del Certiorari, págs. 62-70.

[31] Orden del Tribunal de Primera Instancia, DPE 2010-1335, 2 de mayo de 2011, Apéndice del Certiorari, págs. 79-80.

[32] Moción de Reconsideración de J.F. Montalvo, págs. 3-8, Apéndice del Certiorari, págs. 102-107. Si se deniega una solicitud de sentencia sumaria y es necesario celebrar juicio, "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista

Continúa…

la cual declaró que la sentencia sumaria y la desestimación de la reclamación procedían, por lo que le solicitaba a J.F. Montalvo un proyecto de sentencia.[33] La Sentencia del Tribunal de Primera Instancia recoge los argumentos de J.F. Montalvo en cuanto a que no existe controversia sobre los hechos esenciales, pues se presumen ciertos los hechos presentados por el demandado que no fueron controvertidos por el señor Zapata, ya que éste no cumplió con los requisitos de la Regla 36.3.[34] El Tribunal de Apelaciones corrigió ese error, al determinar

---

evidenciaría limitada a los asuntos en controversia". Así se adelanta el trabajo respecto a los hechos sobre los que no es necesario presentar prueba. Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

[33] Orden del Tribunal de Primera Instancia, DPE 2010-1335, 11 de mayo de 2011, Apéndice del Certiorari, págs. 147-148.

[34] Sentencia del Tribunal de Primera Instancia, DPE 2010-1335, 24 de mayo de 2011, Apéndice del Certiorari, págs. 156-177. La Opinión del Tribunal, en la página 27, señala que el foro primario examinó los cinco hechos propuestos por el señor Zapata y concluyó que estos no impedían que se dictara sentencia sumaria. No obstante, el examen del tribunal de instancia se limitó a señalar que se descartaba el hecho sobre los bonos de productividad bajo la doctrina del "sham affidavit" y que se descartaban los hechos sobre los ingresos de la empresa y la contratación de un nuevo empleado para realizar las tareas del señor Zapata porque ya se había determinado, a base de los hechos presentados por J.F. Montalvo y **admitidos por no haber sido controvertidos de la forma correcta**, que el señor Zapata sabía que había habido una reducción en el volumen de ventas y desconocía si habían contratado a alguien para ocupar su puesto. Sentencia del Tribunal de Primera Instancia, págs. 10-15; Apéndice del Certiorari, págs. 167-172. Por lo tanto, el examen del foro primario es similar al de la Opinión del Tribunal; aunque desglosa los hechos expuestos por el señor Zapata para estudiarlos de manera independiente, su análisis se ve limitado por su interpretación restrictiva de la Regla 36.3, que permite al tribunal discrecionalmente dar por admitidos los hechos

Continúa…

que no procedía la sentencia sumaria porque las alegaciones de J.F. Montalvo quedaron controvertidas y éste tenía que presentar prueba sobre su situación económica precaria y las funciones de los empleados contratados posteriormente.[35] No obstante, este Tribunal revoca al foro apelativo al concluir que el tribunal de instancia tenía discreción para disponer sumariamente del caso, por meros formalismos, aun cuando originalmente entendió que había controversia sobre la naturaleza del despido.

No es correcta la conclusión de la Opinión del Tribunal. La Regla 36.3 no dispone que los hechos propuestos en la solicitud de sentencia sumaria que no se discutan en la oposición con referencia específica a su enumeración se podrán entender admitidos si, a discreción del juzgador, no se toma en consideración otra prueba o referencia que lo refute. Y es que una formalidad procesal no puede ir por encima del principio básico de la sentencia sumaria; si hay hechos materiales en controversia, **no** procede la decisión sumaria. Esta determinación la tiene que hacer el juez o la jueza al evaluar el expediente del caso, no utilizando una fórmula enfocada en los requisitos de forma. La norma que establece la Opinión es contraria a la propia Regla 36 de Procedimiento Civil. Leída de manera integral, la Regla revela claramente que el cumplimiento con unas formalidades, diseñadas para facilitar al tribunal el estudio del caso, no exime al juzgador del deber de estudiar la totalidad del expediente para asegurase que no existen controversias sustanciales.

B

---

propuestos por J.F. Montalvo habiendo controversias de hechos.

[35] Sentencia del Tribunal de Apelaciones, KLAN 2011-885, 29 de noviembre de 2011, págs. 12-14; Apéndice del Certiorari, págs. 231-233.

Examinemos si en este caso hay hechos esenciales en controversia. Los peticionarios alegaron que no estaba en controversia si se había contratado a alguien nuevo para realizar las funciones del señor Zapata porque éste dijo en su deposición que no sabía si habían contratado a otra persona para el puesto de coordinador y ayudante del presidente que él ocupaba y la señora Migdalia Peña, Directora de Recursos Humanos, dijo en una declaración jurada que no habían contratado a otra persona para realizar las funciones del señor Zapata en el puesto que él ocupaba.[36] En primer lugar, advertimos que "no sé" no necesariamente es una respuesta lo suficientemente clara como para tomarla como una aseveración que fundamente una determinación de hecho. En segundo lugar, las declaraciones no se referían exactamente a los mismos términos; una persona puede ser reemplazada por otra que cumple con las mismas funciones del cesanteado, pero ocupando un puesto con otro nombre. En tercer lugar, el hecho supuestamente incontrovertido de que no se reemplazó al señor Zapata con un nuevo empleado se puso en duda cuando éste expresó que sus deberes se le habían asignado al señor Luis Arroyo, el nuevo contralor de la empresa.[37] Esta aseveración se hizo **en la misma deposición** de la cual

---

[36] Este es el hecho no controvertido #12 de la Solicitud de Sentencia Sumaria: "El querellante no tiene conocimiento si en J.F. Montalvo han contratado a alguien para ocupar su posición de Coordinador y Ayudante del Presidente. A tales efectos, es menester mencionar que Migdalia Peña, Directora del Departamento de Recursos Humanos de la Compañía, declaró bajo juramento que al día de hoy en J.F. Montalvo no se ha contratado a nadie para realizar las funciones que ejercía el querellante en su posición de Coordinador y Ayudante del Presidente. *Exhibit 1; Deposición de José J. Zapata Berríos a la pág. 16. Exhibit 2; Declaración jurada de Migdalia Peña*".

[37] En líneas anteriores de la deposición se discutía que el señor Zapata tenía acceso a algunos estados financieros de la empresa. Deposición del señor Zapata, págs. 10-12, Apéndice del Certiorari, págs. 31-33.

los peticionarios subrayan que el señor Zapata dijo que no sabía específicamente si habían contratado a alguien para su puesto luego de su despido.[38]

> P    Pues ahora le voy a hacer una pregunta en específico. ¿En qué hechos usted se basa para alegar que su despido fue injustificado? Hechos.
>
> R    Fue injustificado, primero, porque estaban cogiendo empleados.
>
> P    ¿Qué empleados cogieron?
>
> …
>
> P    Dígame a quién más cogieron, según usted.
>
> R    Cogieron un nuevo contralor, un nuevo contralor que se llama Luis Arroyo, Luis Arroyo Algorri.
>
> P    Esos son todos, ¿verdad?
>
> R    Sí, esos son todos.
>
> P    Esos tres cogieron. Pero le pregunto si cogieron, luego de que usted se fue de ahí, si han cogido a alguien para la posición de Coordinador y Ayudante del Presidente. ¿Verdad que no?
>
> R    **Cogieron al Sr. Luis Arroyo para sustituirme a mí.**
>
> P    Contralor. El Sr. Luis Arroyo es contralor. Le pregunto si como Coordinador y…
>
> R    No puede ser contralor porque había una contralora y la botaron.
>
> P    Por eso, cogieron un contralor, pero él no es ayudante del presidente. La pregunta mía es si usted sabe, propio y personal conocimiento, si usted sabe de propio y personal conocimiento, acuérdese que usted está aquí bajo juramento, que se escogió a un Coordinador y Ayudante del Presidente. ¿Sí o no?
>
> R    No, no sé, no lo sé.[39]

---

[38] Este es el hecho en controversia #5 de la Oposición a Solicitud de Sentencia Sumaria: "J.F. Montalvo contrató los servicios del Sr. Luis Arroyo Algorri para que realizara las funciones que ejercía el Sr. Zapata. *Véase transcripción de la Deposición, página 16, línea[s] 1 a la 25*".

La contratación de una persona para realizar las funciones que tenía asignadas la persona que fue despedida es esencial en un caso de despido injustificado en el que se alega que el despido se debió a que la empresa, en su reorganización para paliar problemas económicos, decidió que no necesitaba a una persona para realizar esas funciones. La Opinión expone que redistribuir las funciones de un empleado que se despidió por razones económicas entre los empleados restantes no equivale a una sustitución en el empleo.[40] No obstante, en este caso no se trata de que se redistribuyeron las labores sino de que se contrató a una persona nueva para realizar las tareas del cesanteado.

En la moción en oposición a la solicitud de sentencia sumaria se resaltó este hecho y, aun cuando nada se hubiera dicho, aparecía en la deposición que constaba en el expediente del caso. Por esto, no procedía la sentencia sumaria. Era necesario que se presentara prueba sobre cuáles eran las funciones que llevaba a cabo el señor Zapata en su posición de coordinador y ayudante del presidente y cuáles son las funciones asignadas al señor Arroyo en su puesto de contralor.

Además, al evaluar la solicitud de sentencia sumaria, el tribunal no puede dirimir asuntos de credibilidad relacionados con hechos esenciales.[41] Para ello es necesario un juicio plenario. La Opinión menciona que el hecho propuesto que está admitiendo, referente a que el señor Zapata no fue reemplazado por un nuevo empleado, está

---

[39] (Énfasis suplido.) Deposición del señor Zapata, págs. 15-16, Apéndice del Certiorari, págs. 36-37.

[40] Opinión del Tribunal, pág. 37, n. 12.

[41] Abrams Rivera v. E.L.A., 178 D.P.R. 914, 932-934, 942-943 (2010); Nieves Díaz v. González Massas, 178 D.P.R. 820, 848-850 (2010); Carpets & Rugs v. Tropical Reps, 175 D.P.R. 614, 638 (2009); Piñero v. A.A.A., 146 D.P.R. 890, 904 (1998); Cuevas Segarra, *op. cit.*, págs. 1069-1070.

apoyado por la declaración jurada de la Directora de Recursos Humanos, señora Peña.[42] Se trata de dos declaraciones en controversia, la de la señora Peña y la del señor Zapata, y habría que dirimir credibilidad o evaluar las declaraciones en contraste con el resto de la prueba, especialmente aquella sobre las funciones del señor Zapata y del señor Arroyo. Por eso, si la razón para favorecer al demandado es que la declaración jurada de la señora Peña merece mayor credibilidad que las expresiones del señor Zapata en su deposición y su declaración jurada, tampoco puede resolverse el caso mediante sentencia sumaria.

La Opinión del Tribunal reconoce que el hecho de que el señor Arroyo estuviera realizando las funciones del señor Zapata pondría en controversia el hecho propuesto de que no se contrató a otra persona para reemplazarlo y, por ende, la justificación del despido. Sin embargo, se niega a considerar la alegación del señor Zapata porque no cumple con las formalidades de la Regla 36.3. Señala la Opinión:

> Notamos que, aunque la relación de hechos propuesta por el señor Zapata bajo el renglón número cinco (5) resulta **directamente contraria** a la formulación número doce (12) según sometida por J.F. Montalvo en su Solicitud de Sentencia Sumaria, esta última no fue controvertida acatando el procedimiento exigido por la Regla 36.3 de Procedimiento Civil de 2009, *supra*, ya que, en su contestación, el recurrido no hizo referencia expresa al número específico del párrafo que intentaba rebatir. En vista de ello, el tribunal primario no venía obligado a considerar los hechos planteados por el recurrido bajo el inciso número cinco (5).[43]
>
> Por lo tanto, damos por admitido lo consignado en el párrafo número doce (12) de los **hechos materiales** que no están en controversia según propuestos por la parte peticionaria, a los efectos de que no se contrató a otra persona para realizar las labores del señor Zapata en su puesto como Coordinador y Ayudante del Presidente.[44]

---

[42] Opinión del Tribunal, pág. 36.

[43] (Énfasis suplido.) *Íd.* pág. 36, n. 11.

[44] (Énfasis suplido.) *Íd.* pág. 37.

Este razonamiento sobre la admisión discrecional y automática de hechos propuestos que no fueron rebatidos cumpliendo con las formalidades de la Regla 36.3 me parece totalmente desacertado. Es simplemente incomprensible que se reconozca que existen hechos materiales en controversia y, aun así, se determine que procede dictar una sentencia sumaria.

II

Por otro lado, la Opinión incorpora innecesariamente a nuestra jurisprudencia la doctrina federal del "sham affidavit", que dispone que una parte no puede presentar una declaración jurada para contradecir un testimonio suyo anterior, si lo hace con el único propósito de evitar que se dicte sentencia sumaria en su contra y sin explicar el por qué de la contradicción.[45]

En primer lugar, nada nos obliga a adoptar una norma procesal federal y aplicarle sus reglas a una parte que desconocía que se aplicaría. Además, nuestras reglas proveen para que se sancione a la parte que presente declaraciones juradas de mala fe o únicamente con propósitos dilatorios.[46] Esto sirve como disuasivo para evitar lo que en el foro federal llaman "sham affidavit".

---

[45] *Véase* Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-807 (1999).

[46] "Si se prueba a satisfacción del tribunal que cualquiera de las declaraciones juradas ha sido presentada de mala fe, o solamente con propósitos dilatorios, el tribunal ordenará inmediatamente a la parte responsable pagar a la otra parte el importe de los gastos razonables en que ésta incurrió como resultado de la presentación de dichas declaraciones juradas, incluyendo honorarios de abogado razonables. Cualquier parte o abogado o abogada que así proceda podrá condenársele por desacato, además de cualquier otra medida o sanción dispuesta en estas

Continúa…

En segundo lugar y como señala la Opinión, la aplicación de la "sham affidavit doctrine" se excluye por distintas razones. La doctrina debe utilizarse, con prudencia, solamente cuando (1) en la declaración inicial se dieron respuestas inequívocas a preguntas claras, precisas y libres de ambigüedad; (2) la inconsistencia entre los dos testimonios es patente y no se refiere a hechos de poca transcendencia, a errores de buena fe o a evidencia descubierta posteriormente y (3) no se provee una explicación para la contradicción aparente.[47] En este caso, la respuesta del señor Zapata en la deposición que se alega que está en contradicción con su declaración jurada no fue inequívoca. Tampoco es manifiesta la supuesta inconsistencia entre ésta y la alegación posterior de que se entregaron bonos de productividad. Además, ésta puede haberse debido a que el señor Zapata olvidó brindar ese dato,[48] no contaba con toda la información o no la había confirmado al momento de la deposición. Esto último no fue explicado en la moción de oposición, pero el señor Zapata no estaba obligado a hacerlo porque nuestras Reglas de Procedimiento Civil no lo requieren.

Al evaluar la transcripción, se puede concluir que la comunicación sobre este punto fue muy ambigua.[49] Por ello, aun si se aplicara la doctrina del "sham affidavit" en Puerto Rico, no se debe tomar lo declarado como una respuesta inequívoca, según lo requiere la

---

reglas". Regla 36.7 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

[47] Opinión del Tribunal, págs. 30-32.

[48] En varias ocasiones en la deposición, éste señala que no recuerda información específica y la busca en sus notas. *Véase* Deposición del señor Zapata, págs. 8-9 y 15; Apéndice del Certiorari, págs. 29-30 y 36.

[49] Véase, Deposición del señor Zapata, pág. 20; Apéndice del Certiorari, pág. 41.

norma federal. Además, vale recordar que las dudas que crean estas declaraciones, según establece nuestra normativa, deben resolverse a favor de la parte contra quien se presenta la solicitud de sentencia sumaria.[50]

A

Referente al contenido de la declaración jurada del señor Zapata Berríos, no dudo que en ocasiones otorgar bonos de productividad en una empresa que sufrió una reorganización esté justificado y no sea relevante para determinar si un despido fue caprichoso, pero, si se alega que es un hecho esencial para la controversia y el tribunal de instancia entiende que es así, se tiene que evaluar prueba para poder determinarlo. No es posible que establezcamos que en todo caso estos bonos se otorgan porque se quiere incentivar la labor de las personas que continúan trabajando en el negocio tras las cesantías o porque la empresa estaba obligada por un contrato de empleo. En el caso ante nuestra consideración, está en controversia si la empresa sufrió una disminución en el volumen de ventas que afectó las ganancias y obligó a despedir empleados y empleadas. Este hecho está relacionado con la alegación de que se pagaron bonos de productividad.

B

Además, sobre las ganancias de la empresa, la Opinión señala que el ingreso neto de J.F. Montalvo se redujo en un 76% para los periodos de 2008 y 2009; que el señor Zapata tenía acceso a los estados financieros y que éste admitió que la empresa estaba reflejando una reducción en el volumen del negocio para la fecha de su despido, en diciembre de 2010. Estos datos corresponden a los hechos no controvertidos #8, #9 y #11 propuestos por J.F. Montalvo en su Solicitud de Sentencia Sumaria. A base de esto, concluye que hubo una

---

[50] <u>Bonilla Medina v. P.N.P.</u>, *supra*.

reducción significativa en el volumen de ventas o de negocio que no fue controvertida.[51]

Sin embargo, es menester aclarar que el señor Zapata declaró que sólo tenía acceso a los estados financieros preparados por la empresa y no a los certificados que fueron sometidos como evidencia, y esto en algunas ocasiones.[52] También indicó que en los estados financieros que vio del 2008 y del 2009 no se reflejaban pérdidas y que nunca vio los del año 2010, pero que las estadísticas preliminares del 2010 mostraban una disminución en ventas, por lo que había recomendado eliminar tiendas y analizar la cuenta de administración.[53] Debe notarse que el informe de auditoría presentado por J.F. Montalvo cubre periodos hasta mayo de 2009. La parte peticionaria no presentó evidencia sobre sus estados financieros, ingresos, ganancias o pérdidas en el 2010, año en que despidió al señor Zapata.

Por ello, no procedía descartar la declaración jurada del señor Zapata por ser supuestamente contradictoria respecto a su deposición. Era necesario presentar prueba sobre las ganancias del negocio y cómo la reducción en el volumen de ventas provocó el despido de empleados, pero no afectó la otorgación de bonos.

III

En fin, la sentencia sumaria es un mecanismo útil para resolver casos en los que no existen hechos en controversia, proveyendo así un remedio a las partes de manera más rápida y económica. No obstante, no es una herramienta que se puede utilizar en cualquier caso, violando

---

[51] Opinión del Tribunal, págs. 34-36.

[52] Deposición del señor Zapata, págs. 10-11; Apéndice del Certiorari, págs. 31-32.

[53] Deposición del señor Zapata, págs. 10-12; Apéndice del Certiorari, págs. 31-33.

el derecho de las partes a tener su "día en corte" y recibir una decisión bien ponderada y justa.

La norma que establece hoy el Tribunal desvirtúa la naturaleza del mecanismo de sentencia sumaria. Este Tribunal no debió revocar al foro apelativo. La determinación original del Tribunal de Primera Instancia, avalada por el Tribunal de Apelaciones, era la correcta: habiendo hechos en controversia, no procede dictar sentencia sumaria.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José J. Zapata Berríos y la
Sociedad de Bienes
Gananciales constituida por
éste y Luz María Rivera
Rolón

    Recurridos                CC-2012-152     Certiorari

      v.

J.F. Montalvo Cash & Carry,
Inc.

    Peticionaria

Opinión Disidente emitida por el Juez Asociado Señor Estrella Martínez a la que se unen el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 27 de agosto de 2013.

La interpretación que hoy realiza la Opinión mayoritaria no se atempera a lo que dispone nuestra Regla 36 de las Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 36. La fórmula que incorpora la mayoría de este Tribunal es una en extremo rigurosa, y más que rigurosa, contraria a las normas básicas de la concesión de una sentencia sumaria y a la naturaleza de este mecanismo. Además, discrepo de la introducción a nuestro ordenamiento del "sham affidavit doctrine" en este caso, así como

de la aplicación de esta doctrina al mismo. Por estas razones, disiento.

I

El Sr. José J. Zapata Berríos fue despedido el 1 de diciembre de 2010 de su puesto de Coordinador y Ayudante de Presidente en J.F. Montalvo, luego de 8 años de servicio ininterrumpido. Como consecuencia, presentó una demanda por despido injustificado y se acogió al procedimiento de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118 *et seq.* Posteriormente, J.F. Montalvo contestó la demanda. Entre sus defensas, planteó que el despido estuvo justificado debido a que la compañía realizó una reorganización por razón de una reducción de volumen de ventas o ganancias, en la cual alegadamente fue eliminado el puesto del señor Zapata.

Así las cosas, J.F. Montalvo presentó una solicitud de sentencia sumaria. En ésta incluyó 12 hechos, los cuales sostuvo que no estaban en controversia. Alegó que su ingreso neto disminuyó considerablemente debido a la reducción en el volumen de ventas. Sostuvo que, como consecuencia, realizó una restructuración y despidió al señor Zapata, así como a otros empleados. Además, arguyó que no se había contratado a otra persona para realizar las funciones correspondientes al señor Zapata. Para

sustentar su solicitud, hizo referencia a una deposición tomada al señor Zapata.

En su oposición a que se dictara sentencia de forma sumaria, el señor Zapata identificó, de manera enumerada del 1-5, cinco hechos que consideró estaban en controversia. Entre éstos, sostuvo que J.F. Montalvo entregó bonos de productividad a empleados con posterioridad a su despedido; que J.F. Montalvo no estaba perdiendo dinero al momento de ser despedido; que J.F. Montalvo empleó a nuevas personas luego de su despido; y que el Sr. Luis Arroyo Algorrí fue contratado para llevar a cabo las funciones que el señor Zapata realizaba.

El Tribunal de Primera Instancia, luego de evaluar la oposición, declaró no ha lugar la solicitud de sentencia sumaria. El foro primario determinó que existía controversia en torno a si la disminución de ganancias y reorganización era un mero pretexto. Sin embargo, en reconsideración, el Tribunal de Primera Instancia desestimó la totalidad de la demanda por despido injustificado. El foro primario sostuvo que el despido estuvo justificado y que respondió a una reorganización provocada por la merma considerable en ingresos. Entre las determinaciones de hechos realizadas se encontraba que el señor Zapata no tenía conocimiento acerca de

si se había contratado a alguien para ocupar el puesto de Coordinador y Ayudante del Presidente. El Tribunal de Primera Instancia entendió que no había controversia sobre este aspecto, debido a que la Directora de Recursos Humanos declaró que no se había contratado a nadie para realizar las funciones que el señor Zapata realizaba en su puesto.

El foro primario no consideró la declaración jurada presentada por el señor Zapata, ya que sostuvo que su interpretación pretendía crear una controversia sobre hechos admitidos por él mismo en una deposición previa. De esta forma, acogió los planteamientos de J.F. Montalvo al respecto. Inconforme, el señor Zapata apeló el fallo en su contra ante el Tribunal de Apelaciones.

El foro apelativo intermedio revocó la determinación del Tribunal de Primera Instancia, por considerar que J.F. Montalvo no logró refutar la existencia de controversias sobre ciertos hechos esenciales. En específico, determinó que aunque hubo evidencia en cuanto a la reducción de ventas de la empresa, el recurrido puso en tela de juicio la necesidad de su despido como parte de una restructuración, lo que exigía la celebración de una vista evidenciaria. Sostuvo que los argumentos de J.F. Montalvo fueron meras alegaciones que debían ser

dirimidas por el tribunal. El mencionado foro determinó en su sentencia que el señor Zapata aceptó en su deposición que otros empleados fueron despedidos y que hubo pérdidas de ingresos. Sin embargo, señaló que consideraba que su despido fue injustificado debido a que se contrataron a otros empleados posteriormente y que, incluso, uno de ellos fue reclutado para sustituirlo en sus funciones. Por ello, determinó que J.F. Montalvo no logró refutar la existencia de controversias sobre hechos esenciales. Inconforme, J.F. Montalvo compareció ante nos mediante un recurso de *certiorari* en el cual señaló, en síntesis, que erró el Tribunal de Apelaciones al determinar que existen hechos materiales en controversia.

En el camino de resolver la controversia ante nos, la Opinión mayoritaria pauta aspectos relacionados a: 1) la interpretación sobre el concepto de justa causa consignado en el artículo 2(e) y (f) de la Ley Núm. 80, *supra*, cuando existe una reorganización por enfrentar una reducción en el volumen de ganancias o ventas de una empresa; 2) los requisitos para impugnar satisfactoriamente una solicitud de sentencia sumaria; y 3) el uso de una declaración jurada que contradice un testimonio

anterior que es traído con el propósito de oponerse a que sea dictada sentencia sumaria.

II

Al atender el segundo aspecto, la Opinión mayoritaria comienza por explicar los requisitos de la Regla 36.3, *supra*, sobre la forma de impugnar una solicitud de sentencia sumaria. Posteriormente, la Opinión analiza los hechos propuestos por las partes y si éstos siguieron las formalidades exigidas. Opinión mayoritaria, págs. 23-27.

En el caso de epígrafe, como mencionamos, la parte demandada presentó una solicitud de sentencia sumaria en la cual sostuvo doce hechos, los cuales alegó que no estaban en controversia. Estos hechos fueron enumerados del 1 al 12. Por su parte, el señor Zapata Berríos en su oposición a que se dictara sentencia de forma sumaria, identificó de manera enumerada, cinco hechos que consideró que estaban en controversia. La primera determinación de la Opinión mayoritaria es que es "indiscutible que la parte recurrida no sometió una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, según requiere la R. 36.3 (b) (2)". Opinión mayoritaria, pág. 26. Basada en esa

premisa errónea, la mayoría concluye que no se rebatió conforme a la regla ninguno de los 12 hechos materiales presentados como que no están en controversia por la parte que solicitó la sentencia sumaria, debido a que "el recurrido no hizo referencia expresa al número específico del párrafo que intentaba rebatir". Opinión mayoritaria, pág. 36, nota 11. El efecto, según la mayoría, es que los hechos presentados en la solicitud de sentencia sumaria se dan por admitidos. Por considerar que el mencionado proceder acerca de la forma y la automaticidad de la determinación de admisión de estos hechos constituye un rigor desmedido que se aleja del texto y propósito de nuestras Reglas de Procedimiento Civil, no estoy de acuerdo con esta determinación.

A.

Como sabemos, la sentencia sumaria es el mecanismo procesal adecuado para resolver controversias que no requieran la celebración de un juicio. Córdova Dexter v. Sucesión Ferraiuoli, 182 D.P.R. 541, 555-556 (2011); Ramos Pérez v. Univisión, 178 D.P.R. 200, 213 (2010). Hemos reiterado que toda duda sobre la existencia de una controversia de hechos *bona fide* debe ser resuelta contra la parte que solicita la sentencia sumaria. Córdova Dexter v.

Sucesión Ferraiuoli, *supra*, pág. 556; González Aristud v. Hosp. Pavía, 168 D.P.R. 127, 138 (2006), Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 610 (2000); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).

Al determinar acerca de la existencia de controversias de hechos que impiden dictar sentencia de forma sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos presentados junto con la moción en oposición, así como los que obren en el expediente del tribunal. Ramos Pérez v. Univisión, *supra*, pág. 216; Cruz Marcano v. Sánchez Tarazona, 172 D.P.R. 526, 550 (2007); Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154 (2005). Cuando los documentos no controvertidos que acompañan la moción de sentencia sumaria demuestran que no hay una controversia de hechos real y sustancial, y solo resta aplicar el derecho, la sentencia sumaria procederá. E.L.A. v. Cole, 164 D.P.R. 608, 625 (2005). Al respecto, en Ramos Pérez v. Univisión, *supra*, pág. 214, este Tribunal expresó que existe una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida.

Quien solicita la sumaria, además de demostrar que no existe controversia de hechos materiales, debe establecer que como cuestión de derecho procede que se dicte sentencia a su favor. Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 526 (1998). La sentencia sumaria se dictará si surge con claridad que el promovido no prevalecerá bajo ningún supuesto de hechos y el tribunal tiene ante sí todos los hechos necesarios para resolver la controversia. Malavé v. Oriental, 167 D.P.R. 593, 605 (2006) (Per Curiam). "Esto es, que no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la evidencia y que el tribunal cuenta con la verdad sobre todos los hechos necesarios o materiales para resolver la controversia ante su consideración". J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Ed. Publicaciones JTS, 2011, T. III, pág. 1040.

El mecanismo de sentencia sumaria es un remedio discrecional que únicamente se concederá cuando la evidencia que se presente con la moción establezca la existencia de un derecho. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 883, 911 (1994). El principio rector para su utilización es el discernimiento del juzgador, ya que de ser mal utilizada podría despojar a un litigante de su día en

corte, afectando así su debido proceso de ley. Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990). Debido a su naturaleza discrecional, su uso debe ser mesurado. Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154, 185 (2005). El propósito de utilizar este estricto criterio es que al evaluar una moción de sentencia sumaria no se lesionen los intereses de las partes. Vera v. Dr. Bravo, 161 D.P.R. 308, 334 (2004).

Los foros apelativos debemos utilizar los mismos criterios que el Tribunal de Primera Instancia al momento de determinar si procede una sentencia sumaria. Íd., págs. 334-335. El foro apelativo solamente enfrenta las siguientes limitaciones: sólo puede considerar los documentos que fueron presentados ante el foro primario y solamente puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales. Const. José Carro v. Mun. Dorado, 186 D.P.R. 113, 129 (2012); Vera v. Dr. Bravo, supra, págs. 334-335. Véase además, J. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Ed. Publicaciones JTS, 2011, T. III, pág. 1042.

En cuanto a la manera de responder una moción de sentencia sumaria, la Regla 36.3, supra, establece que la contestación del promovido debe contener lo

siguiente: 1) una exposición breve de las alegaciones; 2) los asuntos litigiosos o en controversia; 3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; 4) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; 5) una enumeración de los hechos que no están en controversia, con indicación de la prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; y 6) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. Regla 36.3 (b), *supra*.

B.

La Opinión mayoritaria presupone que nuestra Regla 36, *supra*, requiere que la contestación a la solicitud de sentencia sumaria indique específicamente los párrafos, según enumerados por el

promovente. Sin embargo, lo que dispone la regla es que debe hacerse una referencia a los párrafos enumerados por la parte promovente. Ello no es equivalente a requerir establecer específicamente el número del hecho planteado que se pretende rebatir.

La Regla 56 de las Reglas de Procedimiento Civil federal, la cual sirvió de modelo para la creación de nuestra regla referente a la sentencia sumaria, no dispone la forma específica de sustentar la oposición a la sentencia sumaria. Algunos estados, por su parte, han adoptado reglas que disponen un sistema de referencia estilo contrapuntos ("counterpoints"). Este estilo requiere incluir una contestación con indicación de la correspondiente enumeración para cada uno de los hechos sometidos. 11 <u>Moore's Federal Practice</u> 3d Sec. 56.70 (5)(c), pág. 152.1 (2013).

A diferencia de otras jurisdicciones, en las que específicamente se dispone que se darán por admitidos los hechos si no se controvierten específicamente por un párrafo con la correspondiente enumeración, nuestra regla lo que exige es que se haga una referencia al párrafo. En Moore's Federal Practice se reconoce una distinción entre los estados que requieren el sistema de "point" y los que exigen el "counterpoint". Requerir una referencia a los párrafos no es lo mismo que el sistema de

"counterpoints".[54] Nuestra regla no dispone los requisitos que la Opinión mayoritaria intenta incorporar y requerir al sostener que la solicitud de sentencia sumaria debe ser contestada de manera específica, señalando cada uno de los hechos establecidos mediante indicación del número del párrafo.

C.

Por su parte, la Regla 36.3 (d) dispone que, a menos que esté debidamente controvertida conforme lo

---

[54]Por ejemplo, las reglas locales del estado de Oklahoma establecen un sistema claro de "counterpoint". La regla 56.1 dispone lo siguiente:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies **and, if applicable, shall state the number of the movant's facts that is disputed.** All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party. Local Rules, W. D. Okla., L. R. 56.1.

Las reglas locales de Nebraska y Missouri también incluyen la misma fraseología: ("… and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed.") Véanse: NE.Civ.R. 56.1; U.S.Dist.Ct.Rules W.D.Mo., Rule 56.1.

dispone la regla, toda relación de hechos expuesta en la moción de sentencia sumaria o en su contestación **podrá** considerarse admitida si se indican los párrafos o las páginas de las declaraciones juradas o de otra prueba admisible en evidencia donde ésta se establece. Regla 36.3 (d), *supra*. Aún de considerarse que la relación de hechos de la moción no fue debidamente controvertida, no por ello son **automáticamente** admitidos los hechos presentados en la moción de sentencia sumaria o en su contestación. La regla lo que dispone es que "podrá considerarse admitida". Ello ocurrirá luego de que el tribunal analice la prueba ante sí. Debe entenderse que a lo que se refiere la regla, al establecer que "podrá considerarse admitida", es que está ante la consideración del tribunal y el juzgador determinará acerca de la misma. "[E]l Tribunal debe examinar los autos como un todo y toda la prueba que obra allí". Cuevas Segarra, op. cit., pág. 1059; Reeves v. Sanderson Plumbing Prod., 147 Le 2d 105, 121 (2000). La parte contra quien se solicita la sentencia sumaria no siempre tiene que presentar evidencia adicional ni ésta serle requerida para que no sea dictada sentencia sumaria en su contra. Moore's Federal Practice, *supra*, 56.41 (1) (b). El tribunal atenderá los documentos en el récord y determinará si

éstos demuestran que existe una genuina controversia de hechos. Íd. La manera en que se responda una solicitud de sentencia sumaria no tiene el drástico efecto de admitir automáticamente los hechos presentados por la parte que solicita la sumaria como hechos esenciales que no están en controversia.

A tenor con una interpretación integral del resto del texto de la propia Regla 36.3, *supra*, podemos constatar que resulta ilógico dar por admitidos los hechos de manera automática. Al analizar una disposición legal no debemos interpretarla en el vacío, sino en el contexto de todo el estatuto. R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e interpretación de las leyes en Puerto Rico</u>, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, pág. 245. Siguiendo este principio para poder precisar cuál sería el efecto de la frase "podrá considerarse admitida", al examinar en conjunto las disposiciones de la Regla 36, *supra*, surge con claridad que el efecto no puede ser de admisibilidad automática. Veamos.

En las situaciones en que la parte contra quien se presenta la solicitud no contesta ésta en el término dispuesto para ello -escenario más drástico que cuando se contesta sin seguir la fórmula propuesta por la mayoría-, el efecto que impone la

regla es que la moción queda sometida para la consideración del Tribunal. Regla 36.3 (e) de Procedimiento Civil, *supra*. Ni siquiera en ausencia de oposición a una solicitud de sentencia sumaria se entiende que los hechos presentados por el promovente podrían darse por admitidos automáticamente, como intima la Opinión mayoritaria. Por el contrario, la solicitud será considerada por el Tribunal, el cual dictará la sentencia sumaria si no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y si como cuestión de derecho ésta procede. Es decir, simplemente estos hechos quedan sometidos para la consideración del Tribunal. Presentar una oposición a la solicitud de sentencia sumaria, bajo el estándar de rigor desmedido incorporado por la Mayoría, acarrea un efecto más lesivo que no presentar contestación alguna. Mantener el alcance de la ponencia mayoritaria es contrario al propósito que inspiró la adopción del actual texto de despejar controversias. Es decir, sería un contrasentido que la parte que no se opone a una sumaria cuente con mayor protección del Tribunal que la parte que se activó y se opuso a la petición.

Además de lo que deberá contener la contestación a la moción de sentencia sumaria, la Regla 36, *supra*, dispone en su inciso (c) que la parte contraria no

puede descansar en sus alegaciones, sino que deberá contestar de forma tan detallada y específica como lo ha hecho la parte promovente. Independientemente del formato, lo que dispone este inciso es que el que se opone a la solicitud deberá informar las bases de su moción e identificar las porciones de la evidencia en las que se fundamenta, en forma tan específica como lo hizo la parte promovente. Regla 36 (c), *supra*. El mismo inciso dispone que el efecto de no cumplir con lo anterior será que se dictará sentencia sumaria en su contra si procede.

La inquietud de la interpretación que hoy este Tribunal establece sobre lo que dispone la Regla 36, *supra*, va más allá de los vocablos utilizados. Preocupa el efecto de la determinación de admisibilidad. La Opinión mayoritaria dispone que al esos 12 hechos darse por admitidos, los 5 hechos que la parte contraria expone que están en controversia en su oposición a que se dicte sentencia sumaria, solamente se considerarán si sugieren hechos materiales adicionales que hagan improcedente dictar sentencia sumaria, según solicitado. De esta manera, el juzgador no podría considerar los hechos presentados en una contestación como hechos que la parte sostiene están en controversia, ni así tampoco los documentos en el expediente a los que los

párrafos o las páginas de las declaraciones juradas u otra evidencia a la que se hace referencia, si no sugieren hechos adicionales y no se controvirtieron mediante referencia al número del párrafo específico. Al amparo de esta interpretación, el juzgador tiene carta abierta para hacer caso omiso de toda esa evidencia en el expediente, aunque revelen hechos contradictorios a los sometidos por la parte que solicitó la sentencia sumaria.

Reconozco que el inciso (d) de la citada Regla 36.3, en su segundo párrafo, establece que el tribunal no tiene la obligación de considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a la prueba donde se establecen. El tribunal tampoco tiene obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la que no se haya hecho referencia en una relación de hechos. Sin embargo, el tribunal debe hacerlo, de así entenderlo necesario. El objetivo de aligerar la tramitación de los casos no debe menoscabar el principio de alcanzar una solución justa. Ninguna parte de esta disposición establece que no se podrán considerar hechos presentados si sugieren hechos contradictorios a los sometidos por la parte que solicitó la sentencia sumaria y no se

controvierten mediante referencia al número del párrafo específico. Tampoco impide que se considere la prueba a la que se hace referencia. Por el contrario, el inciso (e) de la Regla 36.3, *supra*, dispone que "la sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente". Regla 36.3, *supra*. Esto presupone que se considerará de forma integral y no automatizada la prueba ofrecida a la que se hace referencia.

Es decir, el tribunal no tiene discreción para hacerse de la vista larga si existe evidencia señalada que sostiene una controversia de hechos por el automatismo de admitir los hechos presentados por la parte promovente y que no fueron debidamente controvertidos. Mucho menos cuando la propia disposición lo que establece es que la relación de hechos expuesta y no controvertida, según lo dispuesto en la regla **podrá** considerarse admitida.

El Informe de las nuevas Reglas de Procedimiento Civil del Secretariado de la Conferencia Judicial demuestra que el Comité entendió importante expresar en la Regla 36 los requisitos del contenido de la solicitud de sentencia sumaria y su correspondiente contestación, ya que ello facilita el trámite de su consideración ante el tribunal. Informe de las Reglas de Procedimiento Civil del Secretariado de la Conferencia Judicial y Notarial, Tribunal Supremo de Puerto Rico, pág. 405 (2008). Sin embargo, señala el Informe que antes de tomar una decisión, el tribunal analizará los documentos que acompañan la solicitud y su oposición, así como los que obran en el expediente y, a base de ello, determinará si la parte que se opone controvirtió algún hecho importante y pertinente. Íd., pág. 406. Esto se justifica, ya que en aquellos casos que no exista una clara certeza sobre los hechos importantes y pertinentes de la controversia, no procede una sentencia sumaria. Íd., pág. 407. Por lo tanto, el juzgador tiene un deber no discrecional de analizar los documentos que se acompañan, tanto a la solicitud, como a su contestación, independientemente del formato del contenido de la moción.

Sin embargo, la interpretación que sostiene la Opinión mayoritaria altera las normas básicas de la

concesión de una sentencia sumaria. Más allá de una mera interpretación de la referida Regla, este Tribunal impone, por *fiat* judicial, unas consecuencias no contempladas en la Regla 36, *supra*. Como agravante, se aleja del propio texto de la norma interpretada y sus consecuencias serán contrarias al propósito y a la propia naturaleza de la sentencia sumaria. De esta manera, una mayoría de este Tribunal optó por traer el automatismo por la cocina, concediéndoles un cheque en blanco a los jueces de los tribunales de instancia para hacer caso omiso a evidencia en el expediente, aunque de ésta surja claramente que existe controversia de hechos que impide dictar sentencia de forma sumaria.

Además, la Opinión mayoritaria disfraza su plan de automatismo invocando erróneamente la discreción que merece el foro primario. Sostiene que las determinaciones discrecionales del Tribunal de Primera Instancia no serán revocadas a menos que se demuestre que el foro primario abusó de su discreción. Sin embargo, debemos recordar que al determinar si procede una sentencia sumaria los foros apelativos debemos utilizar los mismos criterios que el foro primario. En el presente recurso, nos encontramos en la misma posición que el Tribunal de Primera Instancia. Al evaluar el expediente, estamos

en igual situación para determinar si existe o no alguna controversia genuina de hechos materiales y esenciales.

III

El tercer aspecto que trata la Opinión mayoritaria es el uso de una declaración jurada por una parte para contradecir un testimonio anterior, con el fin de impedir que se dicte sentencia sumaria en su contra. Conforme con esta doctrina, una parte no puede crear una controversia de un hecho material mediante una declaración jurada que contradice el testimonio anterior, ello con el fin de impedir que se dicte sentencia de forma sumaria. Van Asdale v. International Game Technology, 577 F.3d 989 (9no Cir. 2004). En estas circunstancias, el hecho que se alega está en controversia se puede percibir como un engaño y, por tanto, no ser considerado un impedimento para conceder la sentencia sumaria. Doe ex rel. Doe v. Dallas Independent School Dist., 220 F. 3d 380 (5to Cir. 2000). Esta norma es conocida como "sham affidavit doctrine".

Sin embargo, no debe rechazarse una declaración jurada de una parte solo porque está en conflicto en algún grado con la deposición anterior. Kennett-Murray Corp. v. Bone, 622 F. 2d 887 (5to Cir. 1980). Tampoco toda declaración jurada contradictoria es

considerada como un engaño para que no sea dictada sentencia sumaria. De Luca v. Trustees of University of Pennsylvania, 834 F.Supp. 2d 282 (E.D. Pa. 2011). Una genuina controversia de hechos puede surgir de la declaración jurada, aun si está en conflicto con la declaración anterior. Palazzo ex rel. Delmage v. Corio, 232 F. 3d 38 (2do Cir. 2000); Kennett-Murray Corp. v. Bone, *supra*.

Cuando es empleada adecuadamente y no de forma inflexible, esta doctrina ha sido de gran valor para las cortes en otras jurisdicciones. C. J. Cox, Reconsidering the sham affidavit doctrine, 50 Duke L. J. 261, 284 (2000). Por ello, aunque la norma ha sido adoptada por la mayoría de los circuitos federales, no es aplicada mecánicamente. 11 James W. Moore, Moore's Federal Practice Sec. 56.14[1][f] at 179 (3d ed. 1997); Shelcusky v. Garjulio, 172 N. J. 185, 196 (2002).

Esta doctrina debe usarse con **prudencia** y solamente en situaciones en las que la declaración inicial contiene respuestas inequívocas a **preguntas claras, precisas y libres de ambigüedad sobre un hecho medular.** Yeager v. Bowlin, 693 F. 3d. 1076 (9no Cir. 2012). Solo debe concederse la sentencia sumaria luego de determinar que la declaración jurada

presenta un engaño de un elemento **esencial y que la inconsistencia es clara e inequívoca.**

Hollins v. Delta Airlines, 238 F. 3d 1255 (10to Cir. 2011); Ram v. Infinity Select Ins., 807 F. Supp. 2d 843 (N. D. Cal. 2011); Croom v. Balkwill, 645 F. 3d 1240 (11mo Cir. 2011). Por ello, para que sea de aplicación la mencionada doctrina, es necesario que la inconsistencia entre el testimonio de la deposición y la declaración jurada posterior sea una manifiesta o patente. García v. Sprint PCS Caribe, 841 F.Supp.2d 538 (2012); Van Asdale v. Int'l Game Tech, *supra*; Kennett-Murray Corp. v. Bone, *supra*. Solamente así la declaración quedará derrotada y no se admitirá. Íd.

Algunas de las circunstancias en las que no debe excluirse la declaración es cuando ésta amplía o explica el testimonio ofrecido en una deposición anterior. Lipsteuer v. CSX Transp., Inc., 37 S.W. 3d 732 (Ky. 2000). 73 Am. Jur. 2d Summary Judgment Sec. 57, Affidavit contradicting earlier sworn testimony, 2013. Ello ocurre cuando las contestaciones de la deposición no son tan claras o las preguntas son ambiguas y la declaración jurada posterior crea una controversia genuina, mediante el ofrecimiento de hechos adicionales. 10 A. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &

Procedure, Sec. 2726 (3ra ed. 1998); Shelcusky v. Garjulio, 172 N. J. 185 (2002). La otra excepción reconocida por algunos circuitos es cuando la declaración jurada presenta evidencia que no era conocida con anterioridad o fue recordada posteriormente por el declarante. Adelman-Tremblay v. Jewel Companies, Inc., 859 F. 2d 517 (7mo Cir. 1988). ("Newly-remembered facts, or new facts, accompanied by reasonable explanation, ordinarily should not lead to the striking of a summary judgment declaration as a sham…".) Yeager v. Bowlin, *supra*; Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999). El tribunal debe observar si el testimonio posterior refleja el testimonio original del deponente, o si otras circunstancias le convencen de que las enmiendas deben permitirse. Axxiom Mfg., Inc. v. McCoy Investments, Inc., 846 F. Supp. 2d 732 (S. D. Tex. 2012).

En numerosas ocasiones las declaraciones juradas que se presentan junto a una oposición a que dicte sentencia sumaria no son fraudulentas. Por esta razón, además de las mencionadas excepciones, muchas cortes federales han desarrollado una práctica general, mediante la cual es considerada válida la declaración posterior hasta que se pruebe que es en efecto un engaño ("sham"). Véanse: Darnell v. Target

Stores, 16 F.3d 174, 179 (7mo Cir. 1994); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 267 (9no Cir. 1991). Según esta práctica, previo a determinar si una declaración jurada debe ser descartada para crear una controversia con el propósito de que no se pueda dictar sentencia sumaria, el tribunal debe realizar una determinación factual de si la declaración jurada que contradice la anterior deposición es en realidad un engaño ("sham"). Kennedy v. Allied Mut. Ins. Co., *supra*. De esta forma, esta regla no puede disponer automáticamente de todo caso en el que se presenta una declaración jurada que parece ser contradictoria a una declaración anterior para sustentar una oposición a que se dicte sentencia sumaria. Esto va en armonía con la visión de que las inferencias deben de verse a la luz más favorable de quien se opone a que se dicte sentencia sumaria en el caso. Cox, *supra*, pág. 280.

Como vemos, aunque existe una regla general en los diversos circuitos que han aplicado esta doctrina acerca de que una parte no puede crear una controversia de hechos mediante una declaración jurada que contradice su testimonio anterior, esta norma tiene unos requisitos para su aplicación y una serie de excepciones reconocidas. La primera determinación que debe realizarse es si existe una

contradicción. De existir, debe evaluarse si la misma es una contradicción clara y patente. Yeager v. Bowlin, *supra*, pág. 1080. Igualmente, para aplicar esta doctrina, el tribunal debe realizar primero una determinación acerca de si la contradicción es en realidad un "sham". Kennedy v. Allied Mut. Ins. Co., *supra*. Además, un tribunal no debe de aplicar esta doctrina cuando la contradicción es explicada razonablemente, cuando existió confusión o falta de claridad en las preguntas de la deposición anterior, o cuando la nueva declaración se basa en evidencia hasta entonces desconocida. Íd.

Establecida la norma general, sus requisitos y sus excepciones, pasemos a determinar si la norma de "sham affidavit doctrine" es de aplicación a los hechos ante nos.

En la deposición realizada al señor Zapata se le preguntó en cuáles hechos alegaba que el despido fue injustificado. El abogado le preguntó si se basaba en que contrataron a otras personas, a lo que el señor Zapata respondió que se basaba en eso y en otras cosas más. Luego, el señor Zapata mencionó la situación del trato hacia él y sostuvo que había otras cosas, pero que no las podía decir. El abogado entonces le dijo lo siguiente: "Bueno, pero en relación a su despido que usted alega que es

injustificado es en lo que usted ha dicho aquí bajo juramento, ¿correcto?". Ap. del recuso de *certiorari*, Deposición, pág. 20. El señor Zapata respondió diciendo "es correcto", y se dio por terminada la toma de deposición. Íd. Luego, en la oposición a que se dictara sentencia sumaria, el señor Zapata sostuvo en una declaración jurada que se habían otorgado bonos de productividad a ciertos empleados. La Opinión mayoritaria concluye que no podía traer por vez primera en la oposición a la sumaria el asunto de los bonos de productividad. La justificación de la Opinión mayoritaria para ello es la citada jurisprudencia federal que establece que no puede una parte de forma acomodaticia acompañar una declaración jurada que contradice o impugna una declaración anterior para establecer una controversia de hechos artificial.

Conforme al derecho anteriormente expuesto, considero que no es de aplicación esta regla a la circunstancia en el caso de epígrafe debido a que no es una contradicción el no traer el fundamento de los bonos de productividad en la deposición. Contestar algunos fundamentos y expresamente decir que hay otros fundamentos, pero que no los adelantará, no es lo mismo que contradecir.

Precisamente, el objetivo del "sham affidavit doctrine" es que una persona no presente una declaración posterior con el propósito de dar una versión simulada, ficticia o falsa de hechos con el propósito de impedir que se dicte sentencia sumaria en su contra. Un tribunal no debe aplicar esta doctrina cuando la contradicción no es una patente con el testimonio anterior o cuando no exista una incompatibilidad. La declaración jurada ofrecida por el señor Zapata no parece presentar una versión simulada, ficticia o falsa de hechos. Por el contrario, trajo elementos los cuales consideraba que debían ser expresados y que contravenían el que se dictara sentencia sumaria.

Sin embargo, aun sin considerar que debe ser descartada por ser supuestamente contradictoria a lo declarado en la deposición, considero que el hecho de brindar bonos de productividad a empleados posteriormente a realizar los despidos por la supuesta reorganización por reducción en las ganancias o productividad, no es un hecho que vaya en contra de la alegación de la supuesta reorganización por disminución de ventas o ganancias en este caso. La Opinión mayoritaria reconoce ello. Sostiene que no debía considerarse el señalamiento del señor Zapata, acerca de que se habían brindado bonos de

productividad posterior a su despido, porque esto no debía ser motivo para no brindar la sentencia sumaria solicitada. Una reducción de empleados motivada por una reducción en las ventas o ganancias no es óbice para que se brinden bonos de productividad a otros empleados. Por ello, esta alegación no planteaba una controversia sobre un hecho esencial, según requerido por la Regla. En consecuencia, resulta innecesaria la consideración de la introducción del "sham affidavit doctrine" a nuestro ordenamiento y la aplicación de esta norma a los hechos ante nos.

IV

Por último, evaluemos si procedía dictar sentencia sumaria en el caso de epígrafe o si, por el contrario, existían hechos en controversia que imposibilitaba que fuera dictada.

De entrada, surge que hay controversia sobre el hecho número 12 presentado por J.F. Montalvo, acerca de si se contrató a alguien para llevar a cabo las funciones que realizaba el señor Zapata.

Sin embargo, la Opinión mayoritaria no atendió el hecho número 5 planteado por el señor Zapata en su oposición por considerar que estaba relacionado con el hecho número 12 presentado por J.F. Montalvo, pero que no se cumplió con el nuevo automatismo que se pauta por la mayoría para oponerse. Así, hacen caso

omiso sobre el mismo, tal cual no hubiese sido planteado y no estuviese sustentado en el expediente.

J.F. Montalvo en su solicitud de sentencia sumaria sostuvo como hecho número 12 que el señor Zapata no sabía si se había contratado a alguien para su puesto y presentó una declaración jurada de la Directora de Recursos Humanos de la compañía a los efectos de establecer que no había controversia sobre este aspecto. En su declaración, la Directora de Recursos Humanos señaló que el señor Zapata era la única persona en el puesto de Coordinador y Ayudante del Presidente al momento de su despido. Además, sostuvo que no se había contratado a nadie para realizar las funciones que realizaba el señor Zapata hasta el momento de esa declaración.[55]

Por su parte, el señor Zapata sostuvo en su oposición a que se dictara sentencia sumaria, específicamente en el hecho 5, que se había contratado a alguien para realizar las funciones pertinentes al puesto que ocupaba. Más aún, especificó que habían contratado al Sr. Luis Arroyo Algorrí para realizar sus funciones. Lo anterior fue

_____

[55]En específico, expresó lo siguiente: "Al día de hoy en J.F. Montalvo no se ha contratado a nadie para realizar las funciones que ejercía José J. Zapata Berríos en su posición de Coordinador y Ayudante del Presidente".

sustentado      mediante      indicación      de      las correspondientes páginas de su deposición.

El foro primario determinó que el señor Zapata no tenía conocimiento si se había contratado a alguien para ocupar el puesto de Coordinador y Ayudante del Presidente. Sin embargo, entendió que no existía controversia sobre este aspecto debido a la declaración realizada por la Directora de Recursos Humanos, en la cual expresó que no se había contratado a nadie para realizar las funciones que el señor Zapata llevaba a cabo en su puesto.

La declaración jurada de la Directora de Recursos Humanos no sostiene que no se contrató a nadie para el puesto de Coordinador y Ayudante de Presidente, solamente sostiene que no se contrató a nadie para realizar las funciones del puesto. Notoriamente, existe controversia entonces sobre si J.F. Montalvo contrató o no personal para ocupar el puesto de Coordinador y Ayudante del Presidente. La compañía podía presentar descripciones del puesto de las personas contratadas y no lo hizo. Tampoco existe claridad acerca de si se contrató personas dentro de la clasificación ocupacional, elemento esencial en este caso en el que el patrono alegó como justa causa para el despido del señor Zapata una reorganización de la empresa en la que determinó que no necesitaba

las funciones del empleado despedido. J.F. Montalvo no logró establecer los elementos esenciales de su defensa.[56]

La Opinión mayoritaria sostiene que una redistribución de funciones como consecuencia de la eliminación de un puesto no equivale a una sustitución en el empleo. Una redistribución de funciones no es lo mismo que el reempleo de otras personas. Conviene recordar que si se contratan a otras personas para realizar las mismas funciones de quien fue despedido debe cumplirse con los requisitos establecidos en los incisos referentes al reempleo, porque de lo contrario podría ser un despido en

---

[56]Es importante señalar que cuando la parte que solicita la sentencia sumaria es la parte con el peso de la prueba en el juicio, la carga de la prueba para que su solicitud de sentencia sumaria prevalezca debe ser mayor. Tiene que demostrar que puede probar los elementos esenciales de su defensa o reclamo. "[W]here the moving party is the party with the ultimate burden of proof at trial, the prima facie burden is often higher, requiring that the party to show that it can, in fact, carry its burden of proving all essential elements of its claim or defense." S. Baicker-Mckee y otros, Federal Civil Rules Handbook, Thomson West, 2013, págs. 1121-1122, citando a J.S. ex rel. Snyder v. Blue Mountain School Dist., 650 F. 3d 915, 925 (3er Cir. 2011); Mauerhan v. Wagner Corp., 649 F. 3d 1180, 1185 (10mo Cir. 2011); VRV Development L.P. v. Mid-Continent Cas. Co., 630 F 3d 451, 455 (5to Cir. 2011). Por ello, cuando un patrono demandado al amparo de la Ley Núm. 80, supra, presenta una solicitud de sentencia sumaria, éste debe probar los elementos esenciales de su defensa.

violación a la Ley Núm. 80, *supra*. Véase Art. 3, Ley Núm. 80, 29 L.P.R.A. sec. 185(c).

La misma Opinión mayoritaria señala que esa redistribución de tareas podría darse entre uno o varios empleados restantes de la empresa. No obstante, al reclutar a nuevos empleados es necesario cumplir con las disposiciones de reempleo mencionadas. La Ley Núm. 80, *supra*, no impide que una vez se despidan empleados por razones atribuibles a la empresa, sus funciones sean asignadas a otros empleados que mantendrán sus respectivos puestos. Sin embargo, si el patrono decide volver a emplear a personas para que lleven a cabo labores iguales o similares a las que realizaba la persona despedida, el principio de antigüedad debe respetarse entre empleados que estén en la misma clasificación ocupacional, siempre que cuenten con las destrezas necesarias o que pueda adiestrarse en un tiempo corto y a un costo mínimo. Íd. Debe seguirse el orden de antigüedad en la reposición cuando "dentro de los seis (6) meses siguientes a su cesantía el patrono tuviere la necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido, y dentro de su clasificación ocupacional". Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80,

Aprobada el 30 de mayo de 1976, según enmendada, 2000, pág. 37. Si existiera "una diferencia clara o inconcusa a favor de la eficiencia, capacidad o utilidad del empleado, estos criterios serán utilizados en lugar de la antigüedad". Íd.

Un patrono no puede despedir de manera caprichosa a empleados tratando de justificar el despido al amparo de alguno de los incisos mencionados y no cumplir con el principio referente al reempleo cuando decide contratar empleados para realizar las funciones que realizaba el empleado despedido. Preocupa que el uso de meros cambios de clasificaciones ocupacionales pudiera usarse como subterfugio con el fin de no cumplir con este principio de reempleo. Por esta razón, las funciones de los empleados que son contratados dentro del periodo dispuesto son relevantes para realizar una determinación acerca de si el despido estuvo justificado. Por tanto, es necesario establecer, si el patrono cumplió con este principio, en caso de que se hayan empleado a personas durante el periodo comprendido en la ley.

En el caso de epígrafe, existe controversia sobre si se contrataron empleados con posterioridad al despido del señor Zapata, y dentro de los 6 meses de su despido, para labores iguales o similares a las

que desempeñaban dichos empleados al momento de su despido, y dentro de su clasificación ocupacional. Además, el empleado puso en controversia la necesidad de su despido como parte de la alegada reestructuración, justificación brindada por el patrono. Esta realidad impedía conceder la sentencia sumaria en cuestión. Del expediente se desprende la necesidad de recibir prueba y escuchar testimonio en cuanto a hechos esenciales a la controversia. Además, J.F. Montalvo no logró establecer los elementos esenciales de su defensa. Existen controversias que impedían dictar sentencia de forma sumaria y determinar que el despido estuvo justificado.

Aun bajo el análisis que realiza la Opinión mayoritaria acerca de la forma de oponerse a una sentencia sumaria, llegaríamos a igual determinación que la anteriormente expresada. Surgen del expediente controversias genuinas al respecto, y este Tribunal no debe ignorar ello. Es un principio esencial que la sentencia sumaria solamente debe dictarse en casos claros, y cualquier duda sobre si un hecho ha sido contradicho debe resolverse a favor de la parte que se opone a que sea dictada sentencia sumaria. Al considerar de forma integral y no automatizada la prueba ofrecida a la que se hace referencia, recalcamos que llegaríamos a la misma conclusión

acerca de la existencia de evidencia señalada que sostiene una controversia de hechos.

                                    V

   Por los fundamentos antes expuestos, disiento del criterio mayoritario. En su lugar, confirmaría el dictamen del Tribunal de Apelaciones, y en consecuencia, denegaría la solicitud de sentencia sumaria y devolvería al Tribunal de Primera Instancia para la continuación de los procedimientos.


                                Luis F. Estrella Martínez
                                     Juez Asociado